**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RYAN PORTER, on behalf of himself and all
others similarly situated,

     Plaintiff,

v.

EMERSON COLLEGE,

     Defendant.

Civil Action No. 1:20-cv-11897-RWZ

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................2

   A.   Emerson's Publications............................................................................................2

   B.   Emerson's Transition to Online Learning ................................................................4

ARGUMENT ..................................................................................................................5

   I.    PLAINTIFF'S CLAIMS ARE IMPERMISSIBLE CHALLENGES TO THE
QUALITY AND VALUE OF THE EDUCATION HE RECEIVED. .......................6

     A.   Plaintiff's Claims for Damages Based on The Quality And Value Of His
Education Are Not Actionable................................................................................6

     B.   Plaintiff's Claims Infringe Unlawfully Upon Emerson's Freedom To Make Its
Own Judgments About How To Perform Its Educational Mission. .......................9

   II.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ......10

     A.   Plaintiff Has Not Alleged A Specific Contractual Promise That Emerson
Allegedly Breached.............................................................................................10

       1.   The Catalogue .............................................................................................11

       2.   The Acceptance Letter .................................................................................13

       3.   The Marketing Materials...............................................................................13

     B.   The Court May Not Infer A Promise Of In-Person Instruction. ................................14

     C.   Plaintiff Accepted Emerson's Substituted Performance,...........................................15
Discharging Emerson From The Alleged Breach ..................................................15

   III.  PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT. ..............16

     A.   Because Plaintiff Alleges an Enforceable Contract, He Cannot Pursue an
Alternative Claim for Unjust Enrichment...............................................................16

     B.   Plaintiff's Unjust Enrichment Claim Fails to Establish a Plausible Entitlement to
Relief...................................................................................................................17

   IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION. .........................18

   V.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. ...................20

CONCLUSION ............................................................................................................20

#80652033_v4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Antonelli Coll.*,
   304 F. Supp. 3d 656 (S.D. Ohio 2018) ...................................................................6

*AHW Inv. P'ship v. CitiGroup Inc.*,
   980 F. Supp. 2d 510 (S.D.N.Y. 2013)....................................................................8

*Air Sunshine, Inc. v. Carl*,
   663 F.3d 27 (1st Cir. 2011)....................................................................................5

*In re Akanmu*,
   502 B.R. 124 (Bankr. E.D.N.Y. 2013) .................................................................17

*Allen v. Michigan State Univ.*,
   No. 20-000057-MK, 2020 Mich. Ct. Cl. LEXIS 6 (Mich. Ct. Cl. Oct. 1, 2020)....................11

*Ambrose v. New England Ass'n of Schs. and Colls., Inc.*,
   252 F.3d 488 (1st Cir. 2001)..................................................................................7

*Arivella v. Lucent Techs., Inc.*,
   623 F. Supp. 2d 164 ...............................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................6

*Associación de Educación Privada de Puerto Rico, Inc. v. Garcia-Padilla*,
   490 F.3d 1 (1st Cir. 2007)....................................................................................10

*Bahrani v. Northeastern Univ.*,
   No. 1:20cv10946, Dkt. No. 39 (D. Mass. Nov. 6, 2020)......................................11

*Bahrani v. Northeastern Univ.*,
   No. 1:20 (D. Mass Nov. 6, 2020)..........................................................................14

*Barneby v. New England Sch. of Montessori, LLC*,
   No. AANCV156019330S, 2016 WL 3768928 (Conn. Super. Ct. June 9, 2016) ....................6

*In re Barnhart*,
   No. 09-bk-01974, 2010 WL 724703 (Bankr. N.D.W.V. Feb. 26, 2010).................8

*Bauza v. Morales Carrion*,
   578 F.2d 447 (1st Cir. 1978).................................................................................7

#80652033_v4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................5

*Benham v. Lenox Sav. Bank*,
    26 F. Supp. 2d 231 (D. Mass. 1998) ....................................................................15

*Birbiglia v. St. Vincent Hosp.*,
    3 Mass. L. Rep. 407, 1994 WL 878836 (Mass. Super. Ct. Dec. 29, 1994) ...........8

*Bleiler v. College of Holy Cross*,
    No. 11-11541-DJC, 2013 WL 4714340 (D. Mass. Aug. 26, 2013)......................17

*In Re: Boston Univ. Covid-19 Refund Litig.*,
    No. 1:20 (D. Mass. Nov. 4, 2020)........................................................................14

*Budnick v. Barnstable Cty. Bar Advocates, Inc.*,
    No. 92-1933, 1993 WL 93133 (1st Cir. Mar. 30, 1993) ......................................20

*Cavaliere v. Duff's Bus. Inst.*,
    605 A.2d 397 (Pa. Super. Ct. 1992) ......................................................................6

*Chong v. Northeastern Univ.*,
    No. 20-10844-RGS, 2020 WL 7338499 (D. Mass. Dec. 14, 2020)......................12

*Chong v. Northeastern University*,
    No. 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) ........11, 12, 16, 17

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
    228 F.3d 24 (1st Cir. 2000)....................................................................................6

*Cuesnongle v. Ramos*,
    713 F.2d 881 (1st Cir. 1983)........................................................................7, 9, 11

*Dalke v. Central Mich. Univ.*,
    No. 20-000068-MK, 2020 Mich. Ct. Cl. LEXIS 3 (Mich. Ct. Cl. Sept. 25,
    2020) ....................................................................................................................11

*David v. Neumann Univ.*,
    177 F. Supp. 3d 920 (E.D. Pa. 2016) ..................................................................18

*Dinu v. President & Fellows of Harvard Coll.*,
    56 F. Supp. 2d 129 (D. Mass. 1999) ....................................................................15

*Doe v. Town of Framingham*,
    965 F. Supp. 226 (D. Mass. 1997) ........................................................................6

*Gillis v. Principia Corp.*,
    832 F.3d 865 (8th Cir. 2016) .................................................................................6

#80652033_v6

*Gomez-Jimenez v. New York Law School*,
  36 Misc. 3d 230 (N.Y. Supr. Ct.), *aff'd*, 103 A.D.3d 13 (N.Y. App. Div. 2012) .................... 7

*Grutter v. Bollinger*,
  539 U.S. 306 (2003) .......................................................................................................... 9

*Guckenberger v. Boston Univ.*,
  974 F. Supp. 106 (D. Mass. 1997) ................................................................................ 9, 14

*Hamilton v. Partners Healthcare Sys., Inc.*,
  209 F. Supp. 3d 379, 387 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018) ...................... 5

*Hebert v. Vantage Travel Service, Inc.*,
  444 F. Supp. 3d 233 (D. Mass. 2020) .............................................................................. 16

*Horrigan v. Eastern Mich. Univ.*,
  No. 20-000075-MK, 2020 WL 6733786 (Mich. Ct. Cl. Sept. 24, 2020) .......................... 11, 17

*John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*,
  186 F. Supp. 2d 1 (D. Mass. 2002) .................................................................................. 18

*Lindner v. Occidental Coll.*,
  No. CV 20-8481-JFW(RAOx), 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ............. *passim*

*Lobster Co. v. Bay State Lobster Co.*,
  No. 92-6348-E, 1994 WL 902930 (Mass. Super. Ct. Oct. 31, 1994) .................................... 19

*Lovelace v. Se. Mass. Univ.*,
  793 F.2d 419 (1st Cir. 1986) ............................................................................................ 9

*Malden Police Patrolman's Assoc. v. Malden*,
  82 N.E.3d 1055 (Mass. App. Ct. 2017) ............................................................................ 16

*Morris v. Brandeis Univ.*, No. 01-P-1573, 2004 WL 369106 (Mass. App. Ct. Feb.
  27, 2004) ........................................................................................................................ 14

*Murphy v. Wachovia Bank*,
  29 Mass. L. Rep. 537, 2012 WL 1326642 (Mass. Super. Ct. Jan. 23, 2012) ........................ 18

*Paynter v. New York Univ.*,
  66 Misc. 2d 92 (N.Y. App. Div. 1971) .............................................................................. 9

*Regents of Univ. of Calif. v. Bakke*,
  438 U.S. 265 (1978) ....................................................................................................... 9, 10

*Rinsky v. Trs. of Bos. Univ.*,
  No. 10cv10779-NG, 2010 WL 5437289 (D. Mass. Dec. 27, 2010) ................................ 13, 14

iv

*Roe v. Loyola Univ. New Orleans*,
No. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) ................................................18

*Rogers v. Comcast Corp.*,
55 F. Supp. 3d 711 (E.D. Pa. 2014) ...................................................................................18

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) .....................................................................................6, 7, 10

*Russell v. Salve Regina College*,
890 F.2d 484 (1st Cir. 1989) ................................................................................................9

*Salerno v. Florida S. Coll.*,
No. 8:20, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) ...................................................19

*Satam v. Northeastern Univ.*,
No. 1:20cv10915, Dkt. No. 40 (D. Mass. Nov. 6, 2020) ...................................................11

*Schaer v. Brandeis Univ.*,
735 N.E.2d 373 (Mass. 2000) ..............................................................................................7

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017) ..................................................................................................16

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) ..................................................................................10, 13, 15

*Stenger v. Ferris State Univ.*,
No. 20-000084-MK, 2020 Mich. Ct. Cl. LEXIS 5 (Mich. Ct. Cl. Oct. 1, 2020) ...................11

*Sullivan v. Bos. Architectural Ctr., Inc.*,
786 N.E.2d 419 (Mass. App. Ct. 2003) ................................................................................7

*Sun Grp. U.S.A. Harmony City v. CRRC Corp.*,
No. 17-cv-02191-SK, 2018 WL 10689420 (N.D. Cal. July 9, 2018) .....................................8

*Sweeney v. DeLuca*,
20 Mass. L. Rep. 628, 2006 WL 936688 (Mass. Super. Ct. Mar. 16, 2006) ..........................18

*Sweezy v. New Hampshire*,
354 U.S. 234 (1957) .............................................................................................................9

*Verlanga v. Univ. of San Francisco*,
No. CGC-20-584829, Slip Op. (Cal. Super. Ct. Nov. 12, 2020) ...................................17, 19

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993) ....................................................................................................6

#80652033_v6

*Yoon v. Shin*,
    57 N.E.3d 1066, 2016 WL 4577500 (Mass. App. Ct. Sept. 2, 2016) ......................................19

*Zarum v. Brass Mill Materials Corp.*,
    134 N.E.2d 141 (Mass. 1956) ................................................................................14

*Zwiker v. Lake Superior State Univ.*,
    No. 20-000070-MK, 2020 Mich. Ct. Cl. LEXIS 8 (Sept. 4, 2020) ...................................11, 17

**Other Authorities**

Declaration of a Public Health Emergency Relative to COVID-19 in the City of
    Boston, Mar. 15, 2020, *available at*
    https://bphc.org/onlinenewsroom/Documents/Declaration%20of%20Public%2
    0Health%20Emergency.pdf ................................................................................4

Declaration of a State of Emergency to Respond to COVID-19, Mar. 10, 2020,
    *available at* https://www.mass.gov/news/declaration-of-a-state-of-emergency-
    to-respond-to-covid-19; ................................................................................4

One Emerson Projection, *available at* https://classof2020.emerson.edu/........................................4

Proclamation on Declaring a National Emergency Concerning COVID-19,
    *available at* https://www.whitehouse.gov/presidential-actions/proclamation-
    declaring-national-emergency-concerning-novel-coronavirus-disease-covid-
    19-outbreak/; ................................................................................4

Restatement (Second) of Contracts § 278(1). ................................................................15

Some students report better learning outcomes in the hybrid setting. *See* Inside
    Higher Ed, Did Students in College Housing Learn Better? (Dec. 3, 2020),
    *available at* https://www.insidehighered.com/news/2020/12/03/survey-
    students-campus-housing-had-better-social-and-learning-outcomes ...................................8

WHO Director-General's Remarks, March 11, 2020, *available at*
    *https://www.who.int/dg/speeches/detail/who-director-general-s-opening-
    remarks-at-the-media-briefing-on-covid-19---11-march-2020;* ......................................4

#80652033_v6

## INTRODUCTION

In March 2020, federal, state, and local authorities declared the novel coronavirus, COVID-19, to be a pandemic and a public health emergency.  To protect its students, faculty, staff, and the community, Defendant Emerson College ("Emerson") made the difficult but necessary decision to transition from in-person to remote instruction during the final six weeks of the Spring 2020 semester.  Thanks to Emerson's diligent efforts, students were able to complete their coursework, earn academic credits, receive student services, and, in the case of seniors, obtain their degrees.  Plaintiff Ryan Porter was one of those students.  Plaintiff accepted the transition to remote instruction without complaint, graduated from Emerson in May 2020, was awarded a Bachelor of Fine Arts degree, was placed on the Dean's List, and had his name displayed in lights on the side of an 11-story building in Boston to celebrate his accomplishments.  Five months later he sued his alma mater.

Plaintiff now claims that transitioning to remote instruction broke a promise Emerson allegedly made to provide an in-person education, heedless of a pandemic or government-ordered shutdown.  There was no such promise, nor could there be.  Plaintiff contends further that Emerson committed a form of educational malpractice by transitioning to remote instruction, which he asserts is "a materially deficient and insufficient alternative" to in-person learning, and that he is therefore entitled to the "diminished value" and "reduced benefits" of the education and services Emerson provided from March to May 2020, based on theories of breach of contract, unjust enrichment, and conversion.

The Complaint should be dismissed because, as recognized in Massachusetts and nationally, Plaintiff's claims for allegedly "deficient" or "insufficient" education are not actionable and are barred as a matter of law.  Plaintiff's claims also challenge how Emerson's

curriculum should be taught, and therefore constitute unlawful interference with the college's

constitutionally protected freedom to make its own judgments about how best to perform its

educational mission.

Plaintiff's breach of contract claim also fails because the documents Plaintiff relies

upon—a course catalogue, acceptance letter, and website marketing materials—confirm that no

student could reasonably expect that Emerson was obligated to provide an in-person education in

all circumstances.  Plaintiff's unjust enrichment claim fails because the Complaint alleges that an

enforceable contract governs this dispute, and Emerson's retention of Plaintiff's tuition and fees

was not unjust where the courses and services provided to Plaintiff continued and he earned his

degree.  Similarly, Emerson did not wrongfully accept receipt of tuition and fees, as is required

for a conversion.  Nor has Plaintiff identified a specific, identifiable amount of money that

Emerson allegedly converted, thus dooming his conversion claim.

Emerson shares Plaintiff's frustration that the college was unable to offer certain in-

person experiences because of COVID-19.  But even accepting Plaintiff's allegations as true for

present purposes, he has not stated a plausible claim for relief, and his Complaint must be

dismissed with prejudice.

## BACKGROUND

### A.    Emerson's Publications

Plaintiff was an undergraduate student at Emerson in the Spring of 2020.  Complaint

("Compl.") ¶ 11.  Emerson wrote him an "acceptance letter" which he claims promised "in-

person educational experiences, opportunities, and services."  Compl. ¶ 68.  The acceptance

letter makes no such promises.  *See* Declaration of Meredith Ainbinder ("Ainbinder Decl."), Ex.

1.  Rather, it stated in pertinent part: "At Emerson, you will have the opportunity to indulge your

2

intellectual curiosity, spark your imagination, and bring your professional aspirations to life.  Our faculty will encourage you to view the world from new perspectives and will work with you to nurture and shape your creative ideas."  *Id*.

Before starting the Spring 2020 semester, Plaintiff consulted Emerson's Undergraduate Catalogue (the "Catalogue").  Compl. ¶ 13; Ainbinder Decl., Ex. 2.  The Catalogue sets out, among other things, Emerson's financial policies, academic regulations, and courses offered.  The Catalogue does *not* condition tuition or fees on any particular type of instruction.  To the contrary, the Catalogue's opening paragraph states that Emerson "reserves the right to change any provision and requirement in this catalogue at any time within the student's term of residence."  Ainbinder Decl., Ex. 2 at 4.  Similar reservations are repeated throughout the Catalogue.  *See id.*, Ex. 2 at 331 (retaining discretion "to correct or change any provision or requirement in this catalogue at any time," "to rearrange its courses and class hours," "to drop courses for which registration falls below the required minimum enrollment," and "to change teaching requirements").

The Catalogue provides that students are entitled to a refund of tuition or fees only when they voluntarily leave or withdraw before the fifth week of a semester; no refunds are promised when students are required to leave campus or in any other circumstances.  *See id.*, Ex. 2 at 44 ("No tuition refund . . . is made when withdrawal of a student from classes or on-campus is required by College authorities . . . .");  *id.* ("Mandatory student fees are assessed to students each term and are nonrefundable, regardless of whether the student completes the full academic year or a given term at the College.").

Like many schools, Emerson marketed in-person experiences on its website and other unidentified documents, Compl. ¶¶ 33-37, 66-67, but nowhere in those materials is there a

3

contractual promise to provide in-person education in all circumstances.  Plaintiff acknowledges

that Emerson was unable to offer certain in-person experiences as described in those materials

"because of COVID-19."  *Id.* ¶ 35.

Tellingly, Plaintiff omits that Emerson gave him full credit for the courses he completed

in the spring semester,[1] and in May 2020 Emerson awarded him a Bachelor of Fine Arts degree,

named him to the Dean's List, and publicly illuminated his graduation achievement on the 11-

story Little Building.  Ainbinder Decl., Ex. 3.[2]

B.    **Emerson's Transition to Online Learning**

Emerson faced an unprecedented emergency during the Spring 2020 semester.  In March,

the World Health Organization declared COVID-19 to be a pandemic; President Trump declared

a national emergency; Governor Baker declared a state of emergency in Massachusetts; and the

Boston Public Health Commission declared a public health emergency.[3]  In response, Emerson

---

[1] The Catalogue also describes the courses that Plaintiff took.  Plaintiff took five courses in the
Spring 2020 semester: (1) "Studies in Digital Media and Culture" examined "the dramatic shift
in meaning and process of contemporary communication by investigating the . . . implications of
using digital ways of working,"  Ainbinder Decl., Ex. 2 at 190; (2) "Spec" was a writing
workshop, *id.* at 195; (3) "Seminar in Media Topics" examined "various topics in media arts . . . ,
with emphasis on students' oral and written presentation of material," *id.* at 200; (4) "BFA
Production Workshop" provided "the means for students to produce portfolio work," *id.* at 206;
and (5) "Topics in Literature" examined "literature in at least three genres."  *Id.* at 215.
[2] *See* One Emerson Projection, *available at* https://classof2020.emerson.edu/ (Plaintiff's name at
07:00 minute mark of video).
[3] *See* WHO Director-General's Remarks, March 11, 2020, *available at*
*https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-*
*briefing-on-covid-19---11-march-2020*; Proclamation on Declaring a National Emergency
Concerning COVID-19, *available at* https://www.whitehouse.gov/presidential-
actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-
covid-19-outbreak/; Declaration of a State of Emergency to Respond to COVID-19, Mar. 10,
2020, *available at* https://www.mass.gov/news/declaration-of-a-state-of-emergency-to-respond-
to-covid-19; Declaration of a Public Health Emergency Relative to COVID-19 in the City of
Boston, Mar. 15, 2020, *available at*

#80652033_v6

moved classes online beginning March 23, 2020, having completed more than half the semester in person and on campus.  Compl. ¶¶ 3, 22, 28.  Plaintiff had been charged approximately $23,928 in tuition and a UG Student Services Fee of $436.  *Id.* ¶ 2.  The fee covered registration, orientation, student government, health and other services.  *See* Ainbinder Decl., Ex. 2 at 42, 45-46.  Plaintiff does not dispute that Emerson provided the referenced services *before* the March 23 transition and then continued providing the services remotely via the "Emerson Everywhere" website after March 23.  *See* Ainbinder Decl., Ex. 4.

Because Emerson was unable to continue providing room and board after March 23, the college provided students with a pro-rated refund for those expenses.  Compl. ¶ 11 ("Emerson . . . provided a pro-rated refund for room and board.").  Conversely, because Emerson was able to complete teaching courses and providing student services remotely, the college did not refund tuition or fees.

## ARGUMENT

"To survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 172 (D. Mass. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court need not accept as true "statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory."  *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011).  "If the recited facts 'do not permit the court to infer more than the mere possibility of misconduct,' the complainant has failed to show entitlement to relief."  *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 387 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir.

https://bphc.org/onlinenewsroom/Documents/Declaration%20of%20Public%20Health%20Emergency.pdf.

5

#80652033_v6

2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  In addition, "it is well-established that in reviewing the complaint, [courts] may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint."  *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (quotations omitted).  *Accord Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

## I.   PLAINTIFF'S CLAIMS ARE IMPERMISSIBLE CHALLENGES TO THE QUALITY AND VALUE OF THE EDUCATION HE RECEIVED.

### A.   Plaintiff's Claims for Damages Based on The Quality And Value Of His Education Are Not Actionable.

Plaintiff seeks to recover the "diminished value of the education and other experiences" Emerson provided during the six weeks of the Spring 2020 semester affected by COVID-19.  Compl. ¶¶ 47, 84, 97.  The law in Massachusetts and nationally says he cannot.  Students cannot recover damages for allegedly "deficient" or lower-"value" education.  *See Doe v. Town of Framingham*, 965 F. Supp. 226, 229-30 (D. Mass. 1997) ("educational malpractice" suits "not recognized under Massachusetts law").[4]  Courts reject such claims not only because calculating damages based on perceived differences in the value or quality of education is hopelessly

---

[4] *See also Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (a "breach-of-contract claim that raises questions concerning the reasonableness of the educator's conduct in providing educational services . . . is one of educational malpractice" and must be dismissed (quotations omitted)); *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) ("[T]he overwhelming majority of states that have considered this type of claim have rejected it."); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 664-65 (S.D. Ohio 2018) (rejecting contract-based claim for a tuition refund based on allegation of "inadequate" education); *Barneby v. New England Sch. of Montessori, LLC*, No. AANCV156019330S, 2016 WL 3768928, at *3 (Conn. Super. Ct. June 9, 2016) (dismissing unjust enrichment claim based on alleged deprivation of educational opportunities); *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 403 (Pa. Super. Ct. 1992) ("We are persuaded by the reasoning employed by many courts that have refused to recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education.").

#80652033_v6

speculative (as discussed below), but also because educators, not courts, are best positioned to decide how to teach under changing conditions – they must have "the widest range of discretion" to adapt, as needed.  *Sullivan v. Bos. Architectural Ctr., Inc.*, 786 N.E.2d 419, 422 n.5 (Mass. App. Ct. 2003) (quotations omitted); *see also Schaer v. Brandeis Univ.*, 735 N.E.2d 373, 381 (Mass. 2000) (courts "are chary about interfering with academic . . . decisions made by private colleges and universities" (quotations omitted)).  That discretion is paramount where, as here, a university is "dealing with uncertain contingencies."  *Bauza v. Morales Carrion*, 578 F.2d 447, 451-53 (1st Cir. 1978), and needs to alter its curriculum "for reasons beyond its control." *Cuesnongle v. Ramos*, 713 F.2d 881, 885 (1st Cir. 1983).

Plaintiff cannot plausibly deny that his claims challenge an academic decision:  how to teach courses and educate students during the pandemic in Spring 2020.  That exercise of academic freedom, Plaintiff claims, caused him to suffer damages because the quality and effectiveness of his online education was allegedly of less "value" to him than the in-person education he initially received.  To resolve that issue, this Court will be forced to assess the quality and effectiveness of how Emerson taught Plaintiff on campus during the first half-semester, assess the quality and effectiveness of how Emerson taught Plaintiff remotely during the second half-semester, and somehow guess at the difference in the value.  The law prohibits such speculation because there is no "satisfactory standard of care by which to evaluate educators' professional judgments." *Ambrose v. New England Ass'n of Schs. and Colls., Inc.*, 252 F.3d 488, 499 (1st Cir. 2001).  The value of an education is inherently subjective and uncertain, depending on learning styles, educational priorities, use of each educational service, and other factors.  *See Ross*, 957 F.2d at 414 (noting "inherent uncertainties" in determining "nature of damages" in claims alleging inadequacy of educational offering); *Gomez-Jimenez v.*

7

*New York Law School*, 36 Misc. 3d 230, 233, 252 (N.Y. Supr. Ct.), *aff'd*, 103 A.D.3d 13 (N.Y. App. Div. 2012) (dismissing complaint brought by nine graduates of law school alleging that data published by the school pertaining to graduates' employment and salaries was misleading, and seeking damages equal to the difference between the alleged inflated tuition they paid and the "true value" of a NYLS degree, because measuring such damages "would require the court to engage in naked speculation.").[5]   Therefore, we can never know, to any reasonable degree of certainty, whether Plaintiff would have learned more effectively, less effectively or about the same during a hypothetical ordinary semester on campus compared to the hybrid semester he actually experienced.[6]   Such reckless speculation is barred as a matter of law.

Indeed, for these very reasons, just a few weeks ago, the Central District of California dismissed with prejudice a similar action against Occidental College.  *See Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020).  That court recognized that "the theory underlying all of Plaintiffs' claims is that the education [a student] received once [the college] transitioned to remote instruction in response to the Covid-19 global pandemic was not 'worth the amount charged' or 'in any way the equivalent of an in-person education.' . . .  Thus, the resolution of Plaintiffs' claims would require the Court to make judgments about the quality and value of the education that [the college] provided in the Spring

---

[5] *See also Birbiglia v. St. Vincent Hosp.*, 3 Mass. L. Rep. 407, 1994 WL 878836, at *9 (Mass. Super. Ct. Dec. 29, 1994) ("Speculative damages are not recoverable as a matter of law."); *AHW Inv. P'ship v. CitiGroup Inc.*, 980 F. Supp. 2d 510, 527 (S.D.N.Y. 2013) (dismissing claims for failure to allege non-speculative damages); *Sun Grp. U.S.A. Harmony City v. CRRC Corp.*, No. 17-cv-02191-SK, 2018 WL 10689420, at *9, 10, 11 (N.D. Cal. July 9, 2018) (same); *In re Barnhart*, No. 09-bk-01974, 2010 WL 724703, at *4 (Bankr. N.D.W.V. Feb. 26, 2010) (same).
[6] Some students report better learning outcomes in the hybrid setting.  *See* Inside Higher Ed, Did Students in College Housing Learn Better? (Dec. 3, 2020), *available at* https://www.insidehighered.com/news/2020/12/03/survey-students-campus-housing-had-better-social-and-learning-outcomes.

8

2020 semester. . . .  Plaintiffs' claims are the type of educational malpractice claims that . . . courts throughout the country[] have rejected."  *Id.* at *7.  The same is true here.  As none of Plaintiff's claims are actionable, his entire Complaint must be dismissed.

> **B.**     **Plaintiff's Claims Infringe Unlawfully Upon Emerson's Freedom To Make Its Own Judgments About How To Perform Its Educational Mission.**

The U.S. Supreme Court has long recognized that "universities occupy a special niche in our constitutional tradition" and must be given the freedom under the First Amendment "to make [their] own judgments as to education."  *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003).  One of the "four essential freedoms" of a college is "to determine for itself … how [a course] shall be taught."  *Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 312 (1978) (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957)).  To interfere with this constitutional freedom "would be to constrict the [college] in defining and performing its educational mission."  *Lovelace v. Se. Mass. Univ.*, 793 F.2d 419, 426 (1st Cir. 1986).  Accordingly, "courts should be slow to intrude into the sensitive area of the student-college relationship, especially in areas of curriculum." *Guckenberger v. Boston Univ.,* 974 F. Supp. 106, 151 (D. Mass. 1997) (quoting *Russell v. Salve Regina College*, 890 F.2d 484, 489 (1st Cir. 1989)).

Plaintiff says that Emerson is subject to civil liability for changing the mode of instruction from "in-person and on-campus live education" to remote learning during the pandemic.  The law says otherwise.  "Even to think that a university could be found to have broken its contract when it changed the dates of classes, or the curriculum, for reasons beyond its control, or changed teachers, should startle anyone at all familiar with university life." *Cuesnongle*, 713 F.2d at 885.  *See also Paynter v. New York Univ.*, 66 Misc. 2d 92, 92-93 (N.Y. App. Div. 1971) (per curiam) (dismissing complaint seeking tuition refund for suspension of classes following Kent State anti-war protests, holding that "services rendered by the university

cannot be measured by the time sent in a classroom," and trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year . . . ."). If Emerson could not be liable for a teacher changing where or how she taught Plaintiff's "Seminar in Media Topics" class before the COVID-19 pandemic, then surely the college cannot be liable for changing how that class was taught during a pandemic. To rule otherwise would unlawfully rob the college of its constitutional freedom to decide "what may be taught" and "how it shall be taught." *Bakke*, 438 U.S. at 312; *see also Associación de Educación Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 19 (1st Cir. 2007). As Plaintiff's claims infringe unlawfully on academic freedoms protected by the First Amendment, they must be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

### A.    Plaintiff Has Not Alleged A Specific Contractual Promise That Emerson Allegedly Breached.

Given that colleges have a constitutional right to decide what they teach, how they teach and to whom, students state a breach of contract claim based on a college's teaching choices only if the college made an express promise of a specific condition of instruction that was not provided. *See, e.g.*, *Ross*, 957 F.2d at 416-17; *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020). Plaintiff alleges in conclusory fashion that Emerson promised "in-person and on-campus live education … throughout the semesters affected by Covid-19." Compl. ¶ 69. The sources of this alleged promise are the Catalogue, acceptance letter, and "marketing materials." Compl. ¶¶ 60-68. As none of these sources contains such a promise, Plaintiff's breach of contract claim fails. *See, e.g, Lindner*, 2020 WL 7350212, at *8 (dismissing contract claim because "Plaintiffs have failed to identify any specific language in the 2019-2020 Catalog or any other publication from [the college] that promises in-person instruction").

10

1.      *The Catalogue*

Plaintiff alleges the Catalogue "constitutes an offer to enter a contractual relationship" and contains the "terms of the parties' contractual relationship." Compl. ¶¶ 60-61.  Nowhere does the Catalogue promise in-person instruction or even suggest that Plaintiff's courses required in-person instruction or on-campus facilities.  Absent such a promise, there was no breach of contract.  *See Chong v. Northeastern Univ.,* No. 20-cv-10844-RGS, 2020 WL 5847626, at *3 (D. Mass. Oct. 1, 2020) (dismissing breach of contract claim because the complaint did not plausibly establish the parties' contract included a right to in-person instruction).[7]

In fact, and contrary to Plaintiff's suggestion of a contract to provide in-person instruction, in various provisions of the Catalogue Emerson "reserves the right to change any provision … at any time" and to change "courses" and "teaching requirements."  Ainbinder Decl., Ex. 2 at 4, 331.  Therefore, a change in the mode of instruction for the last half of a semester could not, as a matter of law, breach a term of the Catalogue.  *See Cuesnongle*, 713 F.2d at 885 (in light of reservation of rights provision, no student "could possibly have had a 'reasonable expectation' that the students had a contract right or any right to have classes start on time or any of their other claims"); *Lindner*, 2020 WL 7350212, at *8 n.2 (college "did not

---

[7]  *See also Bahrani v. Northeastern Univ.*, 1:20cv10946, Dkt. No. 39 (D. Mass. Nov. 6, 2020); *Satam v. Northeastern Univ.*, No. 1:20cv10915, Dkt. No. 40 (D. Mass. Nov. 6, 2020); *Zwiker v. Lake Superior State Univ.*, No. 20-000070-MK, 2020 Mich. Ct. Cl. LEXIS 8, at *10-16 (Mich. Ct. Cl. Sept. 4, 2020); *Horrigan v. Eastern Mich. Univ.*, No. 20-000075-MK, 2020 WL 6733786, at *3-5 (Mich. Ct. Cl. Sept. 24, 2020); *Allen v. Michigan State Univ.*, No. 20-000057-MK, 2020 Mich. Ct. Cl. LEXIS 6, at *6-9 (Mich. Ct. Cl. Oct. 1, 2020); *Dalke v. Central Mich. Univ.*, No. 20-000068-MK, 2020 Mich. Ct. Cl. LEXIS 3, at *7-10 (Mich. Ct. Cl. Sept. 25, 2020); *Stenger v. Ferris State Univ.*, No. 20-000084-MK, 2020 Mich. Ct. Cl. LEXIS 5, at *7-9 (Mich. Ct. Cl. Oct. 1, 2020).

#80652033_v6

change the terms of the contract, but exercised its rights under the 2019-2020 Catalog[ue]" to change its programs and courses).

Similarly, Plaintiff fails to identify any specific promise in the Catalogue that was breached with respect to fees.  Nowhere in the Catalogue is there a promise that students will have access to all student services supported by the mandatory UG Student Services Fee.  The fee is not charged by use, and it is not apportioned by each service actually provided; rather, it is "a consolidation of campus-required fees that *support* several College services."  Ainbinder Decl., Ex. 2 at 45 (emphasis added).  Consequently, the transition of a service from in-person to online, or even the cessation of a service, does not breach any promise in the Catalogue.  *See Chong*, 2020 WL 5847626, at *4.[8]  Moreover, the various student services supported by the fee were accessible by Plaintiff before and after the March 23 transition.  *See* Ainbinder Decl., Ex. 2 at 42.

Nor was there a breach of any specific promise to provide tuition and fee refunds.  The Catalogue expressly states that students are eligible for tuition and fee refunds only if they voluntarily request leave or withdrawal before the end of the fifth week of a semester.  *See*

_____

[8] On December 14, 2020, Judge Stearns issued a decision on Northeastern's motion to dismiss plaintiffs' Third Amended Complaint.  *See Chong v. Northeastern Univ.*, No. 20-10844-RGS, 2020 WL 7338499 (D. Mass. Dec. 14, 2020).  That decision is distinguishable, however.  In reviewing plaintiffs' third bite at the apple, Judge Stearns concluded that he could not "as a matter of law, say that no student who read [Northeastern's] statements could have reasonably expected that executing the [Annual Financial Responsibility Agreement] and registering for on campus courses would entitle them to in-person instruction."  *Id.* at *3.  However, unlike with respect to the Emerson materials that Plaintiff claims constitute the contract, the plaintiffs in *Chong* alleged that the university's materials expressly distinguished between classes taught using the "traditional" method—defined as "face-to-face" instruction—and those taught using the "online" method.  *Id.* at *1 (citing Dkt. No. 40, ¶¶ 30-31).  Here, Plaintiff's Complaint contains no such allegations suggesting that his classes would be taught in any particular manner.

Ainbinder Decl., Ex. 2 at 44.  Plaintiff made no such request and, consequently, there was no breach of the refund policy.

### 2. The Acceptance Letter

Plaintiff alleges that Emerson's "acceptance letter" promised "in-person educational experiences, opportunities, and services," Compl. ¶ 68, but the acceptance letter contains no such promise, describing only "the opportunity to indulge your intellectual curiosity, spark your imagination, and bring your professional aspirations to life" and stating that the "faculty will encourage you to view the world from new perspectives and will work with you to nurture and shape your creative ideas."  *See* Ainbinder Decl., Ex. 1.  Consequently, the acceptance letter provides no basis for a breach of contract.  *See Squeri*, 954 F.3d at 71-72 (dismissing breach of contract claim where students alleged a contract was formed when they were accepted into the college, but failed to allege that specific terms required the college to provide earlier notice of its closing).

### 3. The Marketing Materials

Lastly, Plaintiff alleges that Emerson marketed in-person experiences on its website and other unidentified documents, *see* Compl. ¶¶ 33-37, 66-67, but again fails to identify anywhere in those materials an enforceable promise to provide in-person education in all circumstances. Descriptions and depictions of Emerson's campus on its website, without more, do not equate to a contractual obligation to provide in-person instruction.  *See Squeri*, 954 F.3d at 71-72; *see also Rinsky v. Trs. of Bos. Univ.*, No. 10cv10779-NG, 2010 WL 5437289, at *11 (D. Mass. Dec. 27, 2010) (dismissing contract claim where student "failed to offer what exactly the alleged contract promised[,]. . . offering no quotations from the [university's] handbook [and] promotional materials," and failed to "suppl[y] facts from which to fairly infer implied" contract terms);

*Lindner*, No. 20-cv-8481-JFW, 2020 WL 7350212, at *8 n.1 (rejecting argument that college's webpage created contract for in-person education because "the webpage does not promise in-person instruction, but merely states that [the college] is located in Los Angeles and describes in general terms the ways in which [the college]'s location in Los Angeles has influenced its curriculum").

      B.    <u>The Court May Not Infer A Promise Of In-Person Instruction.</u>

      Plaintiff cannot cure the deficiency in his Complaint by arguing that Emerson made an "implied" promise to provide him in-person education. *First*, the express provisions of the Catalogue govern. "The law will not imply a contract where," as here, "there is an existing express contract covering the same subject matter." *Zarum v. Brass Mill Materials Corp.*, 134 N.E.2d 141, 143 (Mass. 1956); *Lindner*, 2020 WL 7350212, at *9 (same). *Second*, the referenced marketing materials generally describing "the College's on-campus experience and opportunities" do not contain any indication of an intent to create enforceable contract rights, much less a specific right to enforce exclusively in-person education. *See Morris v. Brandeis Univ.*, No. 01-P-1573, 2004 WL 369106, at *3 n.6 (Mass. App. Ct. Feb. 27, 2004) (ruling that "generalized representations" are not promissory); *see also Rinsky*, 2010 WL 5437289, at *11; *Bahrani v. Northeastern Univ.*, No. 1:20-cv-10946-RGS, Dkt. No. 39 (D. Mass Nov. 6, 2020) (dismissing implied tuition contract claim).

      *Third*, a student asserting an implied contract claim based on "a university's promotional materials" must allege that he "relied on" those materials. *Guckenberger*, 974 F. Supp. at 151. Plaintiff does not allege that he ever read or relied on statements on Emerson's website or in other unidentified "marketing materials." Compl. ¶¶ 66-67. Failure to allege reliance is fatal to his claim. *See In Re: Boston Univ. Covid-19 Refund Litig.*, No. 1:20-cv-10827-RGS, Dkt. No.

48 (D. Mass. Nov. 4, 2020) (dismissing student's implied contract claim for failure to allege reliance and other essential elements).

*Fourth*, any implied terms between a college and a student must be based on "reasonable expectations" as viewed from the *college's* perspective. Although Plaintiff alleges he believed that "every course in which he enrolled was to be taught in-person," Compl. ¶ 13, the legally relevant question is whether the *college* would "reasonably expect" the student to have a contract right to exclusively in-person instruction. *See, e.g.*, *Dinu v. President & Fellows of Harvard Coll.*, 56 F. Supp. 2d 129, 132 (D. Mass. 1999). Plaintiff fails to identify any statements made by Emerson providing a reasonable expectation of exclusively in-person instruction. To the contrary, in light of Emerson's express reservation of rights, the *only reasonable expectation* during a pandemic and government shutdown orders is that Emerson would either cease its programs or continue them remotely.

In these circumstances, there is no basis alleged in the Complaint from which a contract term for exclusively in-person education may reasonably be implied. *See Squeri*, 954 F.3d at 71 (affirming dismissal of student claims alleging breach of express and implied contract).

C.     Plaintiff Accepted Emerson's Substituted Performance,
       Discharging Emerson From The Alleged Breach

Even if Plaintiff could identify a specific promise breached (he cannot), he accepted Emerson's substitute performance and received the "benefit of the bargain," which discharges Emerson from any alleged breach of contract.

 "If an obligee [Plaintiff], accepts in satisfaction of the obligor's [Emerson's] duty a performance offered by the obligor [Emerson] that differs from what is due, the duty is discharged." Restatement (Second) of Contracts § 278(1); *see also Benham v. Lenox Sav. Bank*, 26 F. Supp. 2d 231, 239 (D. Mass. 1998) (holding that defendant's offer, which plaintiff

15

accepted, had the effect of releasing defendant from its duties under the original contract).

Plaintiff does not allege that he complained to Emerson, objected to the substitution of remote

instruction for in-person classes and activities, requested a voluntarily leave or withdrawal, or

requested a refund prior to filing this lawsuit.  Instead, he participated in the education Emerson

offered following the transition to remote instruction, and, accepting the benefit, graduated on

time.  Having accepted Emerson's substitute performance, Plaintiff cannot state a claim for

breach of contract.

## III.  PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

### A.    Because Plaintiff Alleges an Enforceable Contract, He Cannot Pursue an Alternative Claim for Unjust Enrichment.

A plaintiff is not entitled to recover for unjust enrichment where, as here, a valid contract

defines the parties' obligations.  *Malden Police Patrolman's Assoc. v. Malden*, 82 N.E.3d 1055,

1063 (Mass. App. Ct. 2017).  No equitable relief is available where there is an adequate remedy

at law.  *Id*.  Accordingly, the rule applies even if the plaintiff's contract claim is dismissed.  *See*

*Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) ("It is the availability of a remedy at

law, not the viability of that remedy, that prohibits a claim for unjust enrichment."); *Hebert v.*

*Vantage Travel Service, Inc.*, 444 F. Supp. 3d 233, 245 (D. Mass. 2020) ("Unjust enrichment . . .

is a doctrine of quasi-contract that does not apply where an actual contract controls the parties'

rights. . . .  This applies even where a plaintiff's breach of contract claim is unsuccessful.").

Plaintiff alleges that he has an enforceable contract with Emerson, Compl. ¶ 60, and does

not allege any facts indicating that the contract could be unenforceable due to fraud or other

circumstances.  Additionally, Emerson acknowledges that a contract governs its educational

obligations toward Plaintiff, disagreeing with Plaintiff only about the terms of that contract.  *Cf.*

*Chong*, 2020 WL 7338499, at *4 (allowing unjust enrichment claim to proceed because college

16

"disputes the existence of any binding contract").  Consequently, Plaintiff is barred from

asserting unjust enrichment even in the alternative.  This court should follow the precedent of

multiple rulings across the country dismissing unjust enrichment claims in similar situations.

*See, e.g.*, *Chong*, 2020 WL 5847626, at *4 (dismissing unjust enrichment claim because plaintiff

students pled enforceable contracts); *Verlanga v. Univ. of San Francisco*, No. CGC-20-584829,

2020 WL 7229855, at *5 (Cal. Super. Ct. Nov. 12, 2020) (same); *Horrigan v. Eastern Mich.

Univ.*, No. 20-000075-MK, 2020 WL 6733786 (Mich. Ct. Cl. Sept. 24, 2020) (dismissing both

contract and unjust enrichment claims); *Zwiker v. Lake Superior State Univ.*, No. 20-000070-

MK, 2020 Mich. Ct. Cl. LEXIS 8, at *16-17 (Sept. 4, 2020) (same); *Lindner*, 2020 WL 7350212

(same).

       B.      Plaintiff's Unjust Enrichment Claim Fails to Establish a Plausible
              Entitlement to Relief.

Even if Plaintiff could bring a claim for unjust enrichment in the alternative, the claim

should be dismissed because the Complaint does not plausibly allege the required elements.  An

unjust enrichment claim will lie only if plaintiff bestowed a benefit on defendant, defendant

knew about the benefit, and defendant inequitably retained the benefit.  *Bleiler v. College of Holy

Cross*, No. 11-11541-DJC, 2013 WL 4714340, at *18 (D. Mass. Aug. 26, 2013).  Plaintiff has

not satisfied the third element because Plaintiff received the services that his tuition and fee

covered even after Emerson implemented remote learning, including course credits and his

degree, without objection from Plaintiff, and Emerson retained the tuition and fee consistent with

the express terms of its Catalogue and refund policy.  *See* discussion, *supra*, Part II.C.  In these

circumstances, Emerson's retention of Plaintiff's tuition and fee was not unjust.  *See Bleiler*,

2013 WL 4714340, at *18 (dismissing student's unjust enrichment claim because student "paid

for and received an education, academic credit, room, board and other services"); *In re Akanmu*,

#80652033_v6

502 B.R. 124, 138 (Bankr. E.D.N.Y. 2013) ("The Defendants received tuition payments from the Debtors and, in exchange, provided education to the Debtors' minor children. . . .  The enrichment . . . , therefore, was not unjust."); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016) (dismissing unjust enrichment claim because "Plaintiff fails to allege how it would be unconscionable for the University to retain the tuition paid for classes that she attended"); *Roe v. Loyola Univ. New Orleans*, No. 07-1828, 2007 WL 4219174, at *3 (E.D. La. Nov. 26, 2007) (university in New Orleans not unjustly enriched when it retained tuition for semester that occurred during Hurricane Katrina because "[b]ut for the actions of [the university] in allowing its students to attend other schools . . . , [the] students would have fallen behind and been delayed in receiving their degrees . . . .  [I]f [the university] were required to reimburse plaintiff . . . , plaintiff would be unjustly enriched").

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION.

To plead conversion, Plaintiff must first establish a right to specific tangible property. *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F. Supp. 2d 1, 28 (D. Mass. 2002).  Plaintiff alleges a property right to the refund of an unspecified portion of tuition and fee "funds" paid to Emerson.  Compl. ¶¶ 90, 97.  A claim to an indefinite sum of money does *not* establish a property right subject to conversion, and, therefore, the conversion claim fails as a matter of law.  *See Rogers v. Comcast Corp.*, 55 F. Supp. 3d 711, 719 (E.D. Pa. 2014) (conversion claim failed under Massachusetts law because plaintiffs did "not identify a specific 'lot' or sum of money that has been wrongfully converted"); *Murphy v. Wachovia Bank*, 29 Mass. L. Rep. 537, 2012 WL 1326642, at *5 (Mass. Super. Ct. Jan. 23, 2012) (conversion "extends to tangible property, and in some cases to funds that can be identified, but not money owed on a debt or general damages"); *Sweeney v. DeLuca*, 20 Mass. L. Rep. 628, 2006 WL 936688, at *8 (Mass. Super. Ct. Mar. 16, 2006) ("Money can be the subject of a claim for

18

conversion if the money is a specifically identifiable lot of money, which the defendant was obligated to keep intact or deliver.").[9]

Plaintiff's claim for conversion also fails because the Complaint does not establish that Emerson's exercise of control over Plaintiff's tuition and fee payments was in any way wrongful or that Plaintiff made a demand based on wrongful control.  *See Yoon v. Shin*, 57 N.E.3d 1066, 2016 WL 4577500, at *2 (Mass. App. Ct. Sept. 2, 2016) ("Conversion occurs when a defendant intentionally or wrongfully exercises acts of ownership, control or dominion over personal property to which [the defendant] had no right of possession at the time. . . .  A demand is a necessary preliminary to an action for conversion where the defendant's possession is not wrongful in its inception . . . ." (citations and quotations omitted)).  Emerson retained Plaintiff's tuition and fees as provided by the express terms of the Catalogue and refund policy.  There are no allegations in the Complaint which, if proven, would establish that such retention was wrongful, and there are no allegations that Plaintiff objected to Emerson's retention and demanded a return of his tuition and fees before completing the semester and accepting from Emerson the corresponding credits and degree.  Therefore, Plaintiff has not pled the essential elements of a conversion claim, and the claim must be dismissed.  *See Lobster Co. v. Bay State Lobster Co.*, No. 92-6348-E, 1994 WL 902930, at *6 (Mass. Super. Ct. Oct. 31, 1994) ("the defendants' original possession of the [property at issue] was not wrongful" because plaintiff

---

[9] *See also Salerno v. Florida S. Coll.*, No. 8:20-cv-1494-30APF, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) ("an obligation to pay money, like [plaintiff]'s claim for tuition reimbursement, is . . . insufficiently tangible to qualify as 'property' under these facts."); *Verlanga*, 2020 WL 7229855, at *5 (dismissing plaintiffs' claim that college converted an unknown "prorated portion" of tuition and fees).

#80652033_v6

gave the property to defendants and "there is no evidence that [plaintiff] has made any demand for the return of [the property] nor that such demand has been refused").

## V.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Emerson anticipates Plaintiff may seek to amend his complaint to attempt to cure the deficiencies identified in this motion.  However, dismissal with prejudice is warranted because an amended complaint would interfere with Emerson's freedom to make its own judgments about how to deliver the education students received, no matter what causes of action are alleged.  *See* discussion, *supra*, Part I.B.  Moreover, amendment would be futile because Plaintiff has had months to research and investigate his allegations, his counsel has filed numerous other cases against colleges and universities and is well aware of the issues presented, and there is no set of facts by which Plaintiff could allege a claim that is plausible on its face.  *See Budnick v. Barnstable Cty. Bar Advocates, Inc.*, No. 92-1933, 1993 WL 93133, at *1 (1st Cir. Mar. 30, 1993) (affirming lower court's *sua sponte* dismissal with prejudice of unamended complaint because plaintiff "could not prevail based on the facts alleged in the complaint" and "amendment would be futile").

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

EMERSON COLLEGE,

By its attorneys,

*/s/ Michael T. Maroney*
Paul G. Lannon, Jr. (No. 563404)
Jeremy M. Sternberg (No. 556566)
Michael T. Maroney (No. 653476)
Zachary D. Reisch (No. 704155)
HOLLAND & KNIGHT LLP
10 St. James Ave.

#80652033_v6

Boston, MA 02116
(617) 523-2700
*jeremy.sternberg@hklaw.com*
*paul.lannon@hklaw.com*
*michael.maroney@hklaw.com*
*zachary.reisch@hklaw.com*

Dated:  December 23, 2020

## CERTIFICATE OF SERVICE

I, Michael T. Maroney, hereby certify that this document filed through the ECF system will be sent electronically on this 23rd day of December, 2020, to the registered participants identified on the Notice of Electronic Filing.

*/s/ Michael T. Maroney*

21

#80652033_v6