# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN PORTER, on behalf of himself and all others similarly situated,<br><br>       PLAINTIFF,<br><br>   v.<br><br>EMERSON COLLEGE,<br><br>       DEFENDANT. | Case No. 1:20-cv-11897-RWZ<br><br>**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ryan Porter ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant Emerson College ("Emerson," the "College," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend Emerson College for in person hands-on educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 semester, and had their course work moved to online only learning and failed to receive the services for which they paid fees.

2. Students, like Plaintiff, were required to pay tuition for the Spring 2020 semester to attend Emerson, including a typical tuition price of approximately $23,928.00 for undergraduate students, and a mandatory UG Student Services Fee of $436.00 ("Mandatory Fee"). Additionally,

1

students typically were required to pay over $9,000.00 in room and board if they resided on Emerson housing.

3.    Emerson has not refunded any amount of the tuition or any of the Mandatory Fees, even though it canceled in-person classes on or about March 13, 2020, and began the transition to online only learning starting on March 23, 2020.

4.    Because of the College's response to the COVID-19 pandemic, on or about March 13, 2020, the College also stopped providing services or facilities the Mandatory Fees was intended to cover.

5.    According to a public release on March 10, 2020 Emerson announced "…the college has made the difficult decision to transition all in-person classes to online learning for the remainder of the spring term…Friday, March 13 will be the last day of in-person classes on our Boston campus…beginning March 23, classes will resume remotely."[1] In a follow up release on March 13, Emerson announced that students who are able to safely leave must vacate the residence halls by Friday, March 20 for the remainder of the spring term.[2]

6.    The College's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 13, 2020 constitutes a breach of the contracts between the College and Plaintiff and the members of the Class and is unjust.

7.    In short, Plaintiff and the members of the Class have all paid for tuition for a first-rate education and on-campus, in person educational experiences, with all the appurtenant benefits offered by a first-rate College. Instead, students like Plaintiff were provided a materially deficient and insufficient alternative, which constitutes a breach of the contracts entered into by Plaintiff with the College.

---

[1] https://today.emerson.edu/2020/03/10/update-on-covid-19-moving-classes-online/
[2] https://today.emerson.edu/2020/03/13/important-covid-19-update-march-13/

8.      As to the Mandatory Fee, Plaintiff and the Class have paid fees for services and facilities that were simply not provided.

9.      Emerson College has promoted and marketed that the Student Service fee "is a consolidation of campus-required fees that support several College services."[3] Which includes:

    a.  Student Services – "The Student Services Fee supports all departments that provide student-oriented services and activities on campus, such as the Registrar's Office (registration), Student Life (orientation), and the Commencement Office."[4]

    b.  Student Government Association – "The Student Government Association Fee is charged to support student club- and organization-related programing and activities."[5]

    c.  Health Services – "The Health Services Fee enables students to access the College's Counseling and Psychological Services and the Center for Health and Wellness during the fall and spring terms."[6]

10.     This failure also constitutes a breach of the contracts entered into by Plaintiff with Defendant.

11.     Plaintiff and the Class have been deprived of access to these facilities and services as a result of Defendant's response to the Coronavirus. This failure also constitutes a breach of the contracts entered into by Plaintiff with Defendant.

---

[3]Emerson 2019-2020 Undergraduate Catalogue, Pg. 45
https://www2.emerson.edu/sites/default/files/Files/Academics/academic-affairs-undergrad-catalogue-2019-2020.pdf?_ga=2.140005239.576087979.1609866693-958071244.1609866693 (accessed as of Jan. 5, 2021)
[4] *Id*.
[5] *Id*.
[6] *Id*. at 46.

12.    Rather than offer partial refunds, credits, or discounts to students like Plaintiff and the Class and balance the financial difficulties associated with Covid-19, Defendant has instead elected to place the financial burden entirely upon its students by charging then full tuition and fees when the services Emerson provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class agreed to.

13.    Plaintiff does not challenge Defendant's compliance with the Covid-19 orders that were in place in Massachusetts. Rather, Plaintiff challenges Defendant's decision to retain monies paid by students like Plaintiff and refuse to offer any refunds, provide any discounts, or apply any credit to Plaintiff and Class members' accounts when Defendant failed to provide the in-person and on-campus services.

14.    Plaintiff seeks, for himself and the Class members, the College's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the College closed and switched to online only learning. The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

15.    Plaintiff seeks for himself and the Class members protections including injunctive and declaratory relief protecting Class Members from paying the full cost of tuition and Mandatory Fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendant can actually safely provide.

16.    Plaintiff and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of Defendant's Covid-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

## PARTIES

17.     Plaintiff Ryan Porter was an undergraduate student during the Spring 2020 semester. In the Spring 2020 semester, Emerson charged Plaintiff approximately $23,928.00 in tuition and $436.00 for a UG Student Services Fee. Additionally, Plaintiff Porter was charged $9,200.00 for room and board. Emerson later provided a pro-rated refund for room and board.

18.     Plaintiff Porter is a resident of Mission Viejo, California.

19.     Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiff consulted that Course Catalog and enrolled in courses for the Spring 2020 semester. In consulting the Course Catalog, Plaintiff understood and believed that every course in which he enrolled was to be taught in-person. Plaintiff's understanding and belief was based on the course specifying an on-campus location where the course would be taught, as well as that the courses were not listed as "Hybrid" or "Online" on the Course Catalog. Thus, the in-person nature of the course was part of the benefit of the bargain, and Plaintiff would not have paid as much, if any, tuition and fees for the Spring 2020 semester at Emerson College had he known that the course would not, in fact, be taught in-person.

20.     Plaintiff Porter paid tuition and Mandatory Fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Porter has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after the College's facilities were closed and events were cancelled.

21.     Defendant Emerson College is a private College located in Boston, Massachusetts. Emerson College also maintains a satellite campus in Los Angeles, California

22.     Emerson that was founded in 1880 as the Boston Conservatory of Elocution,

Oratory, and Dramatic Arts. Defendant offers numerous major fields for undergraduate students, as well as a number of graduate programs.

23.     Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country. Defendant is a citizen of Massachusetts.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

25.     This Court has personal jurisdiction over Defendant because it resides in this District.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of this District.

27.     Plaintiff attended Emerson in this District and in the Commonwealth of Massachusetts.

## FACTUAL ALLEGATIONS.

28.     Plaintiff and Class Members paid tuition and Mandatory Fees to attend Emerson's Spring 2020 semester. The Spring 2020 semester started on January 14, 2020 and ended on or around May 1, 2020.

29.     Tuition at Emerson was approximately $23,928.00 for undergraduate students, and a Mandatory Fee for each semester of approximately $436.00. Additionally, students could be required to pay over $9,000.00 in room and board if they resided in Emerson housing.

30.     Plaintiff and the members of the Class paid tuition for the benefit of on-campus live

interactive instruction and an on-campus educational experience throughout the semesters.

31.    Plaintiff and Emerson entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

32.    The terms of the contractual agreement were set forth in the documents and materials provided to Plaintiff from Emerson, including, but not limited to, Emerson's website, marketing materials, the application for admission submitted by Plaintiff and Class Members, the acceptance letters received by Plaintiff and Class Members, the registration materials, the course catalog, course listings, the registration materials, the bills/invoices, the student handbook, and other materials that were provided to Plaintiff and the Class Members.

33.    Prior to Plaintiff's enrollment, Emerson highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were invaluable to Plaintiff's educational experience.

34.    Defendant offered these services to Plaintiff in exchange for payment of tuition and fees.

35.    Defendant offered these services to Plaintiff in exchange for payment of tuition and fees during various semesters during his enrollment, including the Spring 2020 term.

36.    Plaintiff made payments to Defendant based on promises made by Emerson in those documents in lieu of receiving education at other colleges, universities, or academic institutions – or enrolling in online only institutions.

37.    Defendant priced the cost of tuition based on the assumption of a full term of in-person learning.

38.    Upon information and belief, Defendant priced the Mandatory Fee based on the

amount of services that students like Plaintiff would receive via in-person access.

39.     Throughout March 2020, the College made public announcements adjusting educational services and opportunities that affected Plaintiff.

40.     Defendant has not held any in-person classes since March 13, 2020 for undergraduate students.  All classes since March 13, 2020 have only been offered in a remote online format with no in-person instruction or interaction.

41.     The services for which the Mandatory Fee was assessed were also terminated or cancelled at or about this time, such as access to Emerson's  film production, post production, and equipment facilities, health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

42.     As a result of Defendant's response to the Coronavirus, Plaintiff and the Class were denied access to such facilities, services, and technology despite paying the Mandatory Fee.

43.     Emerson has not provided reimbursement or refund information regarding tuition or the Mandatory Fee.

44.     Students attending Emerson's Spring 2020 semester did not choose to attend an online only institution of higher learning, but instead chose to enroll in Emerson's in-person educational programs – with the understanding that Emerson would provide in-person educational opportunities, services, and experiences.

45.     On its website and in its documents, Emerson markets the College's on-campus experience and opportunities as a benefit to students. Emerson's touts its "Emerson Life" stating "When you come to Emerson, you become part of a creative force. You add your voice to a community of independent minds searching for new ways to learn, to share, to engage with the world—and to change it for the better. Our classrooms are settings for exploration and debate as

well as scholarship. They are not just desk-filled rooms; they are also studios, stages, and even sidewalks, all places for self-discovery. As an Emerson student, you will immerse yourself in experiences that extend across campus. You will discover places where you can laugh, play, or lounge. It's all here—a complete life at Emerson—where you will find other wonderful and unique people to both learn from and inspire."[7]

46.     Defendant marketed and conveyed the in-person experiences, including through sample materials like this:



A class in session in the Journalism Production Center                                    11 of 2

[7] https://www.emerson.edu/emerson-life



Students play a game in the Max Mutchnick Campus Center.



On the set of Good Morning Emerson in the Tufte Performance and Production Center



A class in session



Students build a portion of a set.




Students film Good Morning Emerson in the Tufte Performance and Production Center.

47.     Emerson was unable to offer the educational or similar experiences as detailed in the marketing materials and documents provided to Plaintiff and similarly situated individuals because of COVID-19.

48.     Emerson uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities.

49.     On its website Emerson:

> a.      Touts the benefit of living on campus "At Emerson, the city is your home—but you'll also find the reassuring feel of a caring campus community. Living in our on-campus residence halls will give you the opportunity to build your personal network and develop lasting friendships. Resident assistants and residence directors are here to guide you."

> b.      Promotes the hands-on experience students gain through its student organizations "With more than 100 student organizations on campus, students truly shape our community. Join like-minded friends in sponsoring events, putting on productions, attending workshops, and running publications. You'll gain real-life, hands-on experiences while honing your leadership skills and embracing campus life."[8]

50.     However, that is not what students, including Plaintiff and the Class, received during the semesters affected by COVID-19.

51.     As a result of COVID-19, the online-only learning options offered to Emerson's students was different in practically every aspect as compared to what the educational experience afforded Plaintiff and the members of the Class once was.  During the online portion of the Spring 2020 semesters, Emerson used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students, and among students that was expected as per typical in person learning settings.

---

[8] https://www.emerson.edu/emerson-life/campus

52.     Certain online formats being used by Emerson do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

53.     Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

54.     Students, like Plaintiff, were denied access to facilities, such as libraries, laboratories, computer labs, recreation centers, specialized stages, film production rooms and equipment, and study rooms, that are integral to Emerson's educational services for which Plaintiff paid a premium.

55.     Students, like Plaintiff, were denied access to activities offered by campus life that foster intellectual and academic development and independence, and networking for future careers.

56.     Emerson priced the tuition and Mandatory Fee based on the in person educational services, opportunities and experiences it was providing on campus.

57.     Emerson has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for during the semesters affected by Covid-19.

58.     Emerson has not refunded any portion of the Mandatory Fee it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fee covered.

59.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, and for the future semesters where in-person classes are cancelled and moved online.

60.     Defendant's practice of failing to provide reimbursements for tuition and the

Mandatory Fee despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## **CLASS ACTION ALLEGATIONS**

61.     Plaintiff brings this case individually and, pursuant to FRCP 23, on behalf of the class defined as:

> All persons who paid, or will pay, tuition and/or the Mandatory Fee for a student to attend in-person class(es), at Emerson College, during the Spring 2020 or any other semester affected by Covid-19 at Emerson College but had their educational experiences and class(es) moved to online only learning (the "Class").

62.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary, before this Court determines whether certification is appropriate.

63.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP 23 and other statutes and case law.

64.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the College has reported approximately 4,900 or more undergraduate and graduate students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to the College and can be identified through Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

65.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members.  These questions predominate over questions that may affect only individual members of the Class because Emerson has acted on

grounds generally applicable to the classes. Such common legal or factual questions include, but are not limited to:

a. Whether Defendant accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters affected by Covid-19;

b. Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;

c. Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

d. Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 13, 2020;

e. Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

f. Whether Defendant was unjustly enriched by retaining all of the tuition and the Mandatory Fee during the time when Emerson has been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fee was paid;

g. Whether Defendant intentionally interfered with the rights of the Plaintiff and the Class when it cancelled all in-person classes and only provided a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services for which the Mandatory Fee was intended to pay, all while retaining the tuition and the Mandatory Fee paid by Plaintiff and the Class; and

h. The amount of damages and other relief to be awarded to Plaintiff and the Class members.

66. Plaintiff's claims are typical of the claims of the members of the Class because

Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the College stopped providing in mid-March.

67. Plaintiff is a more than adequate class representative. In particular:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b) because his interests do not conflict with the interests of the other Class members who he seeks to represent;

c) no difficulty is anticipated in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

68. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

69. It is impracticable to bring the individual claims of every Class member before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The damages or financial detriment suffered

by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the College. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

70. Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP 23(b)(2) and (b)(3), at the appropriate juncture.

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
**(On Behalf of Plaintiff and the Class)**

71. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

72. Plaintiff brings this claim individually and on behalf of the members of the Class.

73. Plaintiff and Class members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Catalogs, Defendant's publications, and Defendant's usual and customary practice of providing on-campus courses.

74. The language on Defendant's website, Catalogs, and in other materials made available to students promising in-person instruction, campus facilities, services, and resources became terms of the contract. That is, at the time of contract, the parties had the reasonable

expectation that, in exchange for tuition and fee payments, Defendant would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by Emerson at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by Emerson were and are material terms of the bargain and contractual relationship between students and Defendant.

75.     Under their contracts with Defendant, and per Defendant's usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendant's tuition and/or fees for Defendant to provide in-person instruction and access to Defendant's facilities.

76.     When Plaintiff and Class Members sought to enter into a contractual agreement with Defendant for the provisions of educational services for the Spring 2020 Semester, Plaintiff and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying tuition and fees for those selected courses. Defendant's Course Catalog constitutes an offer to enter a contractual agreement.

77.     The Course Catalog provided Plaintiff and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location in which the courses would be held.

78.     Defendant has represented that its in-person educational opportunities, experiences, and services are of substantial value.

79.     Defendant has agreed to provide in-person educational opportunities, experiences, and services to enrolled students.

80.     Defendant has promoted its in-person educational services as being valuable to students' educational experiences and their development.

81.     In marketing materials and other documents provided to Plaintiff, Defendant promoted the value of the in-person education experiences, opportunities, and services that Defendant provided.

82.     In marketing materials and other documents provided to Plaintiff, Defendant promised to provide those in-person education experiences, opportunities, and services in exchange for the payment of tuition and a Mandatory Fee.

83.     Defendant provided Plaintiff with an acceptance letter that Plaintiff accepted based on the promise of in-person educational experiences, opportunities, and services that Defendant would provide.

84.     Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class members have paid Defendant for all financial assessments starting in the Spring 2020 semester.

85.     By ceasing in-person instruction, relegating Plaintiff and Class members exclusively to remote instruction, and shutting down campus facilities and opportunities to Plaintiff and the Class, Defendant failed to provide the services for which Plaintiff and Class members bargained when they entered into their contractual relationship with Defendant.

86.     Defendant's failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract.

87.     Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

88.     Plaintiff and the members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including being deprived of the education, experience,

and services that they were promised and reasonably expected to obtain, and for which they have paid.

89.     Plaintiff and the Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Defendant's breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendant failed and continues to fail to deliver fully.

90.     Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

### SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

91.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

92.     In the alternative, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

93.     By paying Emerson tuition and the Mandatory Fee for the Spring semester, Defendant agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fee that was paid pertained to throughout the semester.

94.     Defendant conveyed in writing in documents and in other materials to Plaintiff and similarly situated individuals that it would provide in-person educational services, opportunities, and experiences.

95.     Defendant conveyed in writing in documents and in other materials that Plaintiff

and similarly situated individuals would have access to the services for which they paid the Mandatory Fee.

96.     Defendant has retained the benefits of the amount of tuition and Mandatory Fee that Plaintiff and similarly situated individuals has provided – without providing the benefits that they are owed.

97.     For example, Defendant failed to provide Plaintiff and the Class members access to any on-campus facility after in or around March 13, 2020. Yet Defendant assessed Plaintiff with tuition and the Mandatory Fee that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

98.     Plaintiff was not able to access such facilities or services remotely.

99.     Plaintiff paid tuition and Mandatory Fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Emerson has previously marketed, promoted, or made available prior to COVID-19.

100.    The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

101.    Defendant has been unjustly enriched by Plaintiff's payment of tuition and the Mandatory Fee.

102.    Despite not being able to provide such services, Emerson failed to provide reimbursements for tuition and the Mandatory Fee despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fee.

103.    Defendant's act was unjust for them to keep money for services they did not render.

104.    Defendant should be required to disgorge all profits resulting from such overpayments and establish a constructive trust from which Plaintiff and Class Members may seek

restitution.

## THIRD CAUSE OF ACTION
## CONVERSION & TAKING OF PROPERTY
### (On Behalf of Plaintiff and the Class)

105.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged

herein.

106.    Plaintiff brings this claim individually and on behalf of the members of the Class.

107.    Plaintiff and members of the Class provided Defendant with property in the form

of funds (tuition and the Mandatory Fee), in exchange for in-person on campus services, facilities

and face to face instruction.

108.    Defendant exercises control over Plaintiff's and Class members' property.

109.    Defendant intentionally interfered with Plaintiff's and the Class members' property

when it unilaterally moved all in-person classes to a remote online format, cancelled all on-campus

events, strongly encouraged students to stay away from campus, and discontinued services for

which the Mandatory Fee was intended to pay, all while retaining the tuition and Mandatory Fee

paid by Plaintiff and the Class.

110.    Defendant has converted Plaintiff's and the Class' property – namely their tuition

and fees - into their own property[9] without just compensation.

---

[9] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training. *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.).  The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student. *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996).  Thus, it is beyond dispute that any college or university receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student.  This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for conversion of those

111. Class members demanded the return of their property proportionate to the reduction in benefit for education and services during the Spring 2020 semester when in-person and on-campus live education, and access to the College's services and facilities were unavailable.

112. Plaintiff and the Class members are entitled to the return of the pro-rated amounts of tuition and the Mandatory Fee each paid equal to the reduction in benefit for education and services during the Spring 2020 semester when in-person and on-campus live education, and access to Defendant's services and facilities were unavailable.

113. Defendant's failure to return the tuition and fees paid by its students is a separate and distinct harm from its failure to provide the promised and agreed-upon in-person learning and on-campus services.

114. It is inequitable for Defendant to convert such funds into its own profits despite the failure to provide such services, experiences, and opportunities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a) For an order certifying the Class under FRCP 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For compensatory damages in an amount to be determined by the trier of fact;

---

funds can be properly sustained. Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

(d)     For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated: January 26, 2021                    Respectfully submitted,

                                        **/s/ Adam M. Stewart**
                                        Edward F. Haber (BBO# 215620)
Michelle H. Blauner (BBO # 549049)
Adam M. Stewart (BBO# 661090)
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
mblauner@shulaw.com
astewart@shulaw.com


Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
Brett R. Cohen, Esq.
Anthony Alesandro, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550

mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.
Jeremy Francis, Esq.
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460


*Counsel for Plaintiff and Proposed Class*



## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 26, 2021.


*/s/ Adam M. Stewart*
Adam M .Stewart