UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN PORTER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>EMERSON COLLEGE,<br><br>Defendant. | **Case No. 1:20-cv-11897-RWZ** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS,
AND APPROVAL OF NOTICE PLAN**

Plaintiff Ryan Porter ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), respectfully submits this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.[1]

## I.    INTRODUCTION

This proposed class action settlement would resolve the claims of students, like Plaintiff, who paid Defendant Emerson College ("Defendant" or "Emerson") for Spring 2020 Semester tuition and fees for educational services that Plaintiffs' claim were not delivered, and whose tuition and fees have not been refunded.

In this action, Plaintiffs have asserted that Emerson breached its contract with students and was unjustly enriched when it failed to provide in-person and on-campus educational services to its students for the entirety of the Spring 2020 semester as a result of the COVID-19 pandemic and it failed to refund any of the tuition and fees paid by students when those services were not provided.  Emerson has defended the action arguing, *inter alia*, that no contract for in-person and on-campus education existed and asserted various affirmative defenses including excused performance and impossibility.  *See* ECF No. 41. Before engaging in discovery and extensive motion practice, the parties mediated this matter before Magistrate Judge Judith G. Dein on Dec. 1, 2021 and Feb. 14, 2022, and ultimately agreed to a proposal recommended by Judge Dein to resolve the class-wide claims asserted by Plaintiff.

As detailed below, the Court should grant preliminary approval because the Settlement provides a fair, reasonable, and adequate recovery for the Settlement Class. Specifically, the

---

[1]    Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement.  References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit A to the Declaration of Michael A. Tompkins, Esq, In Support of Plaintiff's Motion for Preliminary Approval (the "Tompkins Decl.") and all Exhibits are referred to as "Ex #."

Settlement requires Emerson to pay a sum of $2.06 million, which will create a common fund to pay students a pro rata share of the tuition and fees they paid for the Spring 2020 semester, meanwhile accounting for Emerson-funded amounts that did not require repayment including Emerson-backed scholarships and grants. The Settlement provides for substantial cash benefits to Class Members. Class Members contact information will be provided by Defendant (§ 2.7(A)) and Class Members will receive notice directly either by email or regular mail. § 2.4. Class members do not have to take any action to participate in the Settlement. § 2.4(D). Class Members will have the opportunity to submit an Election Form, either in paper or electronic form, to choose the method by which they would like to receive payment. § 1.11. The cash benefits provided by the Settlement, together with the provision of a direct notice program and a simplified payment process, makes the Settlement highly favorable for Class Members.

As set forth below, the Settlement meets all the requirements necessary for preliminary approval. The Court should grant preliminary approval of the Settlement, certify the proposed Class for settlement purposes, and authorize the parties to move forward with class notice of the Settlement.

## I.      PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on October 21, 2020 alleging breach of contract, unjust enrichment and conversion and taking of property based on Emerson's failure to provide a pro rata refund for tuition and fees when it failed to provide the contracted-for in-person and on-campus educational services for the entirety of the Spring 2020 semester.  ECF No. 1; Tompkins Decl. ¶ 7; Declaration of Jason P. Sultzer, Esq. ("Sultzer Decl.") ¶ 7.  On December 23, 2020, Emerson served Plaintiff with a motion to dismiss.  ECF No. 13-14; Tompkins Decl. ¶ 8; Sultzer Decl. ¶ 8. In response to Emerson's motion, Plaintiff filed his Amended Complaint on January 26, 2021. ECF. No. 18; Tompkins Decl. ¶ 9; Sultzer Decl. ¶ 9.

Emerson then filed its motion to dismiss the Amended Complaint on February 10, 2021. ECF No. 20-21; Tompkins Decl. ¶ 10; Sultzer Decl. ¶ 10. The Court denied Emerson's motion to dismiss by Order dated April 15, 2021. ECF No. 32; Tompkins Decl. ¶ 11; Sultzer Decl. ¶ 11. Emerson then served Plaintiff with its Answer, in which it asserted various affirmative defenses to Plaintiff's and the Settlement Class's claims including, *inter alia*, excused performance and impossibility. ECF No. 41; Tompkins Decl. ¶ 12; Sultzer Decl. ¶ 12. After the Court denied Emerson's motion to dismiss, the parties prepared to commence discovery concerning Plaintiff's claims and Emerson's defenses. Tompkins Decl. ¶ 13; Sultzer Decl. ¶ 13.

Prior to the service of any formal discovery, the parties agreed to engage in mediation in an effort to resolve the Action with Judge Dein, who graciously agreed to help facilitate resolution of this matter. ECF No. 43; Tompkins Decl. ¶ 13; Sultzer Decl. ¶ 13. Plaintiffs requested and Defendant produced information concerning the number of enrolled students, the classification of those students, and the tuition paid by students and the amount of scholarships and grants that were awarded to students for the Spring 2020 semester. *Id.* The settlement negotiations were conducted at arm's length over a period of several months. ECF No. 52, 48; Tompkins Decl. ¶¶ 15-16; Sultzer Decl. ¶¶ 15-16. On December 1, 2021 and February 14, 2022, the parties participated in mediation sessions with Judge Dein via Zoom. *Id.* The matter did not resolve at the initial mediation, however, the parties—with the assistance of Judge Dein—continued to pursue settlement discussions and agreed to a second mediation session which took place on February 14, 2022. ECF No. 58; Tompkins Decl. ¶ 16; Sultzer Decl. ¶ 16. At the second mediation session, the parties agreed to a settlement in principle and have spent months working out the details of the settlement, which are the product of hard-fought, arm's length negotiations. ECF No. 58; Tompkins Decl. ¶ 18; Sultzer Decl. ¶ 18. Additionally, the parties have already retained the services of a third-party

settlement claims administrator (Simpluris, Inc.) who has received information on the Class Members and has conducted preliminary calculations to aid the parties in finalizing an allocation formula and methodology based on the data maintained by Emerson. Tompkins Decl. ¶ 19; Sultzer Decl. ¶ 19.

## II.    THE SETTLEMENT

The Settlement's terms are detailed in the Settlement Agreement and Release ("Settlement Agreement"), which Plaintiff attaches as Exhibit A to the Tompkins Declaration. The proposed forms of notice, election form, and proposed order preliminarily approving the Settlement are attached as Exhibits B through D to the Tompkins Declaration, respectively. A summary of the Settlement's key terms follows:

### A.    *Definition of the Class*

The "Settlement Class" is defined in the Settlement Agreement as:

> All students and former students, including graduate and undergraduate, who remained enrolled as of March 13, 2020, who paid, or on whose behalf payment was made to, Defendant Emerson College for Spring 2020 Semester tuition and fees for educational services that were not entirely online, and whose tuition and fees have not been refunded." Excluded from the Settlement Class are (1) any District Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

§ 1.27.

### B.    *Relief For the Settlement Class*

Pursuant to the Settlement, Emerson will pay $2,060,000 into a common fund, which will be used to pay Class Members. § 3.1. Class Members do not need to submit a claim form but may submit an Election Form to choose the method of payment. § 3.2. Importantly, the parties agreed

upon an allocation formula and methodology that closely ties to the claims asserted in this action, including allocation of fees, allocation of tuition, and the same to various subgroups of categories of students enrolled at Emerson during the Spring 2020 semester.

First, Class Members shall be categorized into the following classifications: (1) Undergraduates, (2) Graduate Students, (3) Tuition paying, and (4) Fee paying. § 3.5(A). The Settlement Claims Administrator shall prepare calculations to be approved by the Parties, and the Net Settlement Fund shall be distributed proportionately to all Class Members based on the following terms and criteria:

(a.)    Class Members who are undergraduate students and who paid fees shall be entitled to collect $50.

(b.)    Students who enrolled for online only classes at the beginning of the Spring 2020 Semester, who paid no tuition or fees, or who left Emerson prior to March 6, 2020, are not eligible to collect any proceeds.

(c.)    Class Members who were enrolled in professional studies are entitled to collect $50.

(d.)    90% of the remainder after the allocations in Sections 3.5(B)(I) and (III) (estimated to be $1,000,000) shall be allocated to Class Members enrolled as undergraduate students on a prorated basis based on a percentage of tuition and fees paid to Emerson during the Spring 2020 Semester. Specifically, undergraduate students shall receive a proportionate and prorated distribution of proceeds based on the amount of tuition and fees they paid for the Spring 2020 semester, taking into account any Emerson-funded amounts that did not require repayment.

(e.)    10% of the remainder after the allocations in Sections 3.5(B)(I) and (III) (estimated to be $111,583.33) shall be allocated to Class Members enrolled as graduate students on a prorated basis based on a percentage of tuition and fees paid to Emerson during the Spring 2020 Semester. Specifically, graduate students shall receive a proportionate and prorated distribution of proceeds based on the amount of tuition and fees they paid for the Spring 2020 semester, taking into account any Emerson-funded amounts that did not require repayment.

§ 3.5(B). The sum of all calculated amounts is expected to be approximately $1,315,833.33, after payment of attorney's fees, costs, expenses, service awards, and cost of the Settlement Claims

Administrator. As a result of these calculations by the formula and methodology described above, Class Members who paid more out of pocket (i.e. via their own payments, monies from family members, or student loans) will receive more than students who had their education during that semester subsidized or covered (i.e. students with Emerson-backed scholarships or grants, or other aid that did not requirement repayment). § 3.5(B). Thus, students will receive a truly proportionate refund of tuition and fees that they paid during the Spring 2020 semester.

### C.    *Attorneys' Fees, Cost, and Service Award*

Within the time period established by the Court, Class Counsel will file a Motion for Approval of Attorneys' Fees, Costs and Service Award to be paid from the Gross Settlement Fund. Class Counsel will petition the Court for no more than six hundred eighty-six thousand six hundred sixty-six dollars and sixty-six cents ($686,666.66) which represents one third (1/3) of the Gross Settlement Fund, which shall include attorneys' fees, costs and expenses other than the Settlement Claims Administrator incurred in connection with the Action.  § 3.3(A).

In recognition of their time, costs, and effort in the Litigation, including their undertaking of related risks and burdens, Defendant has agreed not to oppose an application to the Court for payment of a Service Award of up to $7,500 to the named Plaintiff.  § 3.4.

### D.    *Class Release*

In exchange for the benefits conferred by the Settlement, all Class Members who do not opt out will be deemed to have released Emerson from all Released Claims. § 3.6(A). The detailed release language is set forth in Section 3.6 of the Settlement Agreement.

### E.    *Settlement Administrator and Notice Plan*

The parties seek to appointment of Simpluris as the settlement administrator to effectuate and administer the notice plan. *See generally* § 2.2.  Before selecting Simpluris, Inc., the parties engaged in a bidding process whereby the reviewed bids from multiple services administrators.

Tompkins Decl. ¶ 25; Sultzer Decl. ¶ 25.  The parties selected Simpluris based on its reputation for excellent work and breadth of experience administering class actions. *Id*.  Simpluris has already received data from Emerson and has performed preliminary calculations that have helped the parties arrive at an allocation formula and methodology that fairly and adequately allocates the available funds to Class Members based on the alleged harms that were asserted in this action. § 3.5(B).  Additionally, by engaging a Settlement Claims Administrator early, the parties have arrived at methodologies and procedures that will ensure additional procedural protections for Class Members in this unique type of case – over and above those traditionally utilized in class cases – including the use of Election Forms and more modern electronic payment methods (e.g., PayPal, Venmo), prioritizing efficient notice procedure steps (e.g., emailing first to student email accounts, then mailing to non-enrolled Class Members), building in a potential reallocation of unclaimed funds if collection levels fall below an expected rate, and protecting unclaimed monies via a reversion to the Emerson College Student Financial Assistance Fund for the benefit of Emerson students. These types of additional procedures will protect the interest of Class Members. § 2.4(D).

More specifically, within twenty-one days after the Approval Order is signed by the Court, Defendant will provide Settlement Administrator with the Class List. § 2.4(A). The Class List will be an electronic list of each Class Member that provides names, last known addresses, last known email addresses, last known telephone numbers, along with tuition and fee payments totals, amount of university-based scholarships/grants received, present enrollment status, expected graduation date, and other information related to the calculation and distribution of settlement proceeds. § 1.4.

The Notice will inform the Settlement Class about this settlement, and will also advise them of their rights, including their ability to object to, opt-out of, or participate in the settlement.

Within fourteen (14) days after receipt of the Class List, or as otherwise ordered by the Court, the Settlement Claims Administrator shall: (1) email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address; and (2) send through regular U.S. Mail a copy of the Notice and Election Form to all Class Members not presently enrolled at Emerson College for whom the Settlement Claims Administrator does not have a valid email address but has, from Emerson's records, a mailing address. § 2.4(B).

Class Members are not required to take any action to participate in the Settlement. § 2.4(D). Class Members may, however, submit an Election Form to select the method of payment, including via more modern distribution mechanisms like Venmo, PayPal, and other trusted applications. *Id.* The Notice Response Deadline for Election Forms shall be (i) thirty (30) days from the date of the initial mailing or as otherwise set by the Court, and (ii) an additional fifteen (15) days later for any Class Members who were unable to file a timely Election Form, due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances. *Id.*

Moreover, the Settlement Administrator will establish a settlement website that will provide additional information on the Settlement and this Action. On the same date as initial mailing of Notices, notice shall also be provided on a website at an available settlement URL to be agreed upon by the parties, which shall be obtained, administered, and maintained by the Settlement Claims Administrator. § 2.4(E). Copies of this Settlement Agreement, the long-form Notice, and other pertinent documents and Court filings pertaining to the Settlement shall be provided on the Settlement Website. *Id.*

Defendants will comply (through the Settlement Administrator) with the obligation to give notice of the Settlement to federal and state governmental entities as required pursuant the Class Action Fairness Act, 28 U.S.C. § 1715.

### F.      *Opt-Outs and Objections*

Any Class Member wishing to opt out of the Class can do so. To opt out, a Class Member must submit a request in writing to the Settlement Administrator by the Notice Response Deadline. § 2.5(A).

Any Class Member wishing to object to any aspect of the Settlement, including Plaintiff's application for attorneys' fees, can do so.  Class Members who wish to present objections to the proposed settlement must do so in writing. § 2.6(A). To be considered, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Notice Response Deadline. *Id.* The statement must include: (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; and (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules). *Id.*

## III.      ARGUMENT

### A.      *The Court Should Grant Preliminary Approval of the Settlement.*

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (quotation omitted). While the proponent of a class action settlement must demonstrate that the settlement is fair, reasonable and adequate, usually "there is a presumption in favor of the settlement" where, as here, "discovery has been adequate and the parties have bargained at arm's

length." *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (quotation omitted).

Under Federal Rule of Civil Procedure 23(e), approval of a class action settlement is a two-step process: first, a "preliminary approval" order issues; and, second, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness, reasonableness, and adequacy of the settlement, "final approval" is considered. *See* Manual for Complex Litigation § 13.14 (4th ed. 2004). At the preliminary approval stage, the Court "need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (citing *Scott v. First Am. Title Ins. Co.*, No. 06-286, 2008 U.S. Dist. LEXIS 117205, at *3 (D.N.H. 2008)).

While the First Circuit has not specified a methodology for determining preliminary approval, courts in this circuit often look to four factors to determine whether a settlement should be presumed fair: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (quotation omitted); *In re Asacol Antitrust Litig.*, Civil Action No. 1:15-cv-12730 (DJC), 2017 U.S. Dist. LEXIS 158491, at *14 (D. Mass. Sep. 14, 2017) (quoting *Lupron*). The latter factor is reserved for final approval, because "the only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to opt out of the settlement class or object to its terms at the Final Fairness Hearing." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010).

For the reasons set forth below, the Settlement more than meets the standard for preliminary approval.

***First***, the Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. The parties engaged in two formal mediation sessions before Judge Dein, who devoted considerable time and resources to ensuring the parties had process and were able to hear their arguments and the responses to the same. Tompkins Decl. ¶¶ 15-19; Sultzer Decl. ¶¶ 15-19. The first mediation session was unsuccessful, and only after a second day of mediation were the Parties able to reach an agreement on the core terms of the Settlement. Tompkins Decl. ¶¶ 16, 18; Sultzer Decl. ¶¶ 16, 18. Even after that, the Parties negotiated vigorously concerning additional terms of the Settlement, as reflected in the Parties' requests for additional time from the Court to complete their negotiations. Tompkins Decl. ¶¶ 19-20; Sultzer Decl. ¶¶ 19-20. Class Counsel zealously represented their clients at mediation, procuring a substantial recovery for the Settlement Class and a settlement structure that will ensure that real, meaningful cash benefits will go to Class Members.

***Second***, while the Parties exchanged formal discovery requests, but before finalizing and formally responding, the parties began initial settlement discussions. Tompkins Decl. ¶ 13; Sultzer Decl. ¶ 13. Ahead of the mediation sessions, there was sufficient informal discovery that was exchanged, including due diligence on the part of Plaintiff's counsel. Tompkins Decl. ¶ 17; Sultzer Decl. ¶ 17. Indeed, in order to intelligently discuss settlement, Plaintiffs procured from Defendants data concerning the number of undergraduate and graduate students, the amount of tuition paid by the different categories of students, and the amount of grants and scholarships that were awarded by Emerson to students. Tompkins Decl. ¶ 17; Sultzer Decl. ¶ 17. Plaintiffs also were able to view

11

a substantial share of official policy documents from Emerson, including those available on Emerson's website as well as prior versions of the same via the Internet Archives. Additionally, Plaintiff utilized and often cited information maintained in the public data base controlled and distributed by the National Center for Education Statistics, including their Integrated Postsecondary Education Data System. *Id.* This information more than allow Plaintiff to come to an understanding of the charges assessed by Emerson, the College's response to COVID-19 pandemic, the core documents that were generated and disseminated by Emerson as part of the admission, application, enrollment, registration, and payment processes, understand the reasonable expectations of students when they contracted with the College, and understand Emerson's financial situation throughout the Pandemic.

In whole, Class Counsel obtained the necessary information in order to fully evaluate the risks and benefits of the Action before negotiating the Settlement.

***Third***, Class Counsel are highly experienced litigators specializing in consumer class actions and are the forefront of litigation concerning the rights of students during the pandemic. The attorneys of record for Plaintiffs together have dozens of years' experience litigating such actions. *See* Tompkins Decl. ¶¶ 26-31 & Ex. E; Sultzer Decl. ¶ 27 & Ex. 1 (firm resume for The Sultzer Law Group, P.C.); Ex. F (resume of Shapiro Haber & Urmy LLP). In fact, recently in a college refund case pending in the Central District of California, the Honorable Mark C. Scarsi, U.S.D.J., noted the work performed by Leeds Brown Law, P.C. and The Sultzer Law Group, P.C. (along with other co-counsel):

> Counsel here has done significant work in identifying and investigating potential claims, including bringing a meritorious motion for class certification supported by ample evidence. Counsel also has a wealth of experience handling class actions. [Citing the declaration of Michael A. Tompkins, Esq. of Leeds Brown Law, P.C.]. The only firm without substantial class action experience, Charon Law, has experienced co-counsel as support… Counsel has

12

> demonstrated strong knowledge of the applicable law throughout the briefing process for this class certification motion. And finally, counsel has demonstrated it will commit sufficient resources to represent the class in this heavily litigated case…

*See Arredondo v. Univ. of La Verne*, Case No. 2:20-cv-7665(MCS)(RAO) (C.D. Cal. Feb. 8, 2022).

Accordingly, Class Counsel has the knowledge and understanding to competently evaluate the risks and the benefits of the proposed settlement. Based on this evaluation, Class Counsel strongly believe that the proposed settlement confers a significant benefit to Class Members. Tompkins Decl. ¶ 33; Sultzer Decl. ¶ 29.

In addition to the above factors, the substance of the Settlement itself provides evidence of its fairness. Specifically, Class Members will receive a substantial cash settlement benefit to reimburse them on a pro-rata basis for a portion of tuition and fees for the Spring 2020 semester – based on their actual payments to the school offset by the amount of funds they received that did not require repayment, i.e. Emerson-backed scholarships or grants. Moreover, in the event that the Class Members do not cash their settlement checks in the time allotted by the Settlement Agreement, the Settlement Agreement contemplates either a reallocation of funds to Class Members and ensures that any remaining funds will be distributed to the Emerson College Student Financial Assistance Fund for the benefit of Emerson students. § 3.1(B).

Additionally, the claims process set forth in the Settlement is designed to ensure Class Members are the ultimate beneficiaries of the Settlement. Emerson will provide a list of students to the claims administrator who will be able to deliver direct notice to Class Members who will have the option to receive their settlement payment by check or through more modern payment methods, including respected applications such as Venmo and PayPal. § 2.4(D). Class Members will not need to go through a claim submission process. *Id.*

13

In summary, Plaintiff and Class Counsel are confident in the strength of their case but are also pragmatic in their awareness of the various defenses available to Defendant and the risks inherent in continued litigation. The immediate, cash recovery provided by the Settlement provides an excellent result when considering the risks inherent in this litigation and the delay that would necessary occur from protracted litigation. Based on their experience as counsel in similar complex class actions, Class Counsel concludes the Settlement is outstanding, both given the complexity of the litigation and the significant risks and barriers that would have continued to loom in the absence of the Settlement.

**B.** *The Court Should Approve the Class Notice*

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Complex Lit. § 21.312 (internal quotations omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

The proposed Class Notice satisfies all of these criteria. The Class Notice informs Class Members of the substantive terms of the Settlement. It advises Class Members of their options for opting out of or objecting to the Settlement, and how to obtain additional information about the Settlement. The Class Notice is presented in plain English to ensure Class Members read and understand the Class Notice. *See* Ex. B.

As part of the Settlement, Defendants will provide a Class List containing the names, last known addresses, last known e-mail addresses, last known telephone numbers for each Class Member. § 1.4. Within fourteen (14) days after receipt of the Class List, or as otherwise ordered

by the Court, the Settlement Claims Administrator shall (1) email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address, and (2) send by regular U.S. Mail a copy of the Notice and Election Form to all Class Members not presently enrolled at Emerson College for whom the Settlement Claims Administrator does not have a valid email address but has, from Emerson's records, a mailing address. § 2.4(B).  Moreover, on the same date as initial mailing of Notices, notice shall be provided on a website at an available settlement URL to be agreed upon by the parties, which shall be obtained, administered, and maintained by the Settlement Claims Administrator. Copies of this Settlement Agreement, the Notice, and other pertinent documents and Court filings pertaining to the Settlement shall be provided on the Settlement Website. § 2.4(E).

For these reasons, the Court should approve the Class Notice set forth in the Settlement Agreement, and the form of notice attached as Exhibit B to the Tompkins Declaration.

### C.    *The Court Should Certify the Proposed Class For Settlement*

When presented with a proposed class settlement, a court must determine whether the settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. However, where a court is evaluating the certification in the context of a proposed settlement, questions regarding the manageability of the case for trial purposes are not considered. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Here, Plaintiff proposes the following Settlement Class, the certification of which Defendants have assented to for purposes of this Settlement:

> All students and former students, including graduate and undergraduate, who remained enrolled as of March 13, 2020, who paid, or on whose behalf payment was made to, Defendant Emerson College for Spring 2020 Semester tuition and fees for educational services that were not entirely online, and whose tuition and fees have not been refunded.

*See* § 1.27. Excluded from the Settlement Class are (1) any District Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.  Id.

As set forth below, the conditional certification of the Class is appropriate for purposes of settlement because all of the other requirements of Rule 23 have been met, and the proposed class representative, Ryan Porter, meets all the requirements as discussed below.

1.     The Class Satisfies Federal Rule of Civil Procedure 23(a)

Rule 23(a) enumerates four prerequisites for class certification, referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. In light of the Settlement, the Parties agree that each of these requirements is met.

a.     *Numerosity.*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). The threshold to establish numerosity is low. *See Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, No. 05-CV-12024, 2008 U.S. Dist. LEXIS 6140, at *31 (D. Mass. Jan. 29, 2008). Here, there were over 4,800 students enrolled at Emerson during the Spring 2020 semester, including both graduate and undergraduate.  Thus, it is

difficult or inconvenient to join all members of the proposed Settlement Class. *See In re M3 Power Razor*, 270 F.R.D. at 54 (holding numerosity requirement "easily satisfied" where defendant sold over ten million razors and where "[n]o purchaser records were maintained, so there is no possibility of locating, much less joining individually as plaintiffs, all of the potential class members."). Accordingly, the numerosity requirement is satisfied.

<em>b.    Commonality</em>

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury…. Their claims must depend upon a common contention…. That common contention, moreover, must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal citation omitted).

Commonality "requires only that resolution of the common questions affect all or a substantial number of the class members." *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citation and quotation omitted); *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (noting that Rule 23 does not require that all class members share identical claims, but rather that claims be common, and not in conflict). "The threshold of 'commonality,' is not high." *In re Lupron(R)*, 228 F.R.D. at 88 (citation omitted).

Here, the common questions shared among Settlement Class Members include:

(a)    When students paid tuition and fees to Emerson, were they entitled to receive access to campus, its facilities, its in-person technologies, and other in-person and campus-based educational services?

(b)     Based on all of the standardized documents and materials including policy documents, would students reasonably expect to receive in-person and campus-based educational services as part of a student-college contract, as an objective test?

(c)     Did Emerson breach a legal obligation (to provide on-campus and in-person educational services) when it transitioned to remote learning and services during the Spring 2020 Semester as a result of the Covid-19 Pandemic?

(d)     Does Emerson have any affirmative defense that would allow it to not provide in-person, on-campus services and still retain tuition and fees?

(e)     Did Emerson breach a contract with Plaintiff and the Settlement Class by allegedly failing to provide the services and facilities to which the fees pertained after mid-March 2020?

(f)     Was Emerson unjustly enriched?

(g)     What is the proper measure of damages?

Accordingly, the commonality requirement is satisfied here.

c.     *Typicality*

"To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re M3 Power Razor*, 270 F.R.D. at 54-55 (citation omitted); *see also Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) ("As with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members."). Factual distinctions between the Plaintiff's and Class Members' claims will not destroy typicality as long as the claims share the same essential characteristics. *Id.*; *see also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991). Here, for the same reasons Plaintiffs have established commonality,

they have also established typicality. Plaintiffs seek the same relief for the same alleged misconduct; a pro rata refund of tuition and fees for the portion of the Spring 2020 semester that Emerson failed to provide in-person and on-campus educational services.

<em>d.    Adequacy of Representation</em>

Rule 23(a)(4) requires that the "proposed class representatives 'fairly and adequately protect the interests of the class.'" *In re M3 Power Razor*, 270 F.R.D. at 55 (quoting Rule 23(a)(4)). This is satisfied by a showing that "'the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Id.* (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Adequacy has been met in this case. First, the interests of Plaintiff and the Class Members are fully aligned and conflict free: Plaintiff and the other Class Members are "seeking redress from what is essentially the same injury," *In re M3 Power Razor*, 270 F.R.D. at 55, and there are no disabling conflicts of interest. Second, the proposed Class Counsel is qualified and experienced in class action litigation. *See* Tompkins Decl. ¶¶ 26-31 & Ex. E; Sultzer Decl. ¶ 27 & Ex. F; Ex. F. Class Counsel have performed extensive work to date in identifying and investigating potential claims in the Action, and in evaluating and acquiring data through discovery from Defendant. Class Counsel successfully opposed Defendant's motion to dismiss, which raised a host of defenses to Plaintiff's claims.  The net result these efforts is the successful negotiation the proposed Settlement.

2.    <u>The Class Should Be Certified Under Federal Rule of Civil Procedure 23(b)(3).</u>

"In addition to satisfying the four elements of Rule 23(a), plaintiffs must demonstrate that at least one subsection of Rule 23(b) applies." *In re M3 Power Razor*, 270 F.R.D. at 55. The

19

proposed class representative seeks certification of a Settlement Class under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. (quoting Fed. R. Civ. P. 23(b)(3)). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron(R)*, 228 F.R.D. at 92 (quoting *Amchem*, 521 U.S. at 615). "The superiority analysis dovetails with the predominance analysis." *Id.*

a.    <i>Common Questions Predominate.</i>

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *see also In re Lupron(R)*, 228 F.R.D. at 91. "Predominance is a test readily met in certain cases alleging consumer…fraud…." *Amchem*, 521 U.S. at 625. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Wright & Miller, Federal Practice & Procedure § 1778 (2d ed. 1986).

The predominance requirement is satisfied in connection with the proposed Settlement. As discussed above, Plaintiff alleges that the Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing. The central issues for every claimant are substantially the same. Plaintiff Porter alleges that Emerson breached the student-College contract and was unjustly enriched when students paid tuition and fees and Emerson failed to provide students with in-person and on-campus educational services for a portion of the Spring 2020 semester. Plaintiff

20

asserts that the contract in question is based on standardized documents, the reasonable expectations of the parties at the time of contracting, and Emerson's uniform response to COVID-19 and its implementation of a uniform policy to not issue refunds at the conclusion of the Spring 2020 semester. As has been determined in other college refund cases, class certification is appropriate under those circumstances. *Arredondo v. Univ. of La Verne*, Case No. 2:20-cv-7665(MCS)(RAO) (C.D. Cal. Feb. 8, 2022; *Waitt v. Kent State Univ.*, 2020 Ohio Misc. LEXIS 143 (Ohio Ct. Claims Sept. 28, 2020); *Zahn v. Ohio Univ.*, 2020 Ohio Misc. LEXIS 230 (Ohio Ct. Claims Oct. 19, 2020). Under these circumstances, predominance under Rule 23(b)(3) is satisfied. *See In re M3 Power Razor*, 270 F.R.D. at 56 (finding predominance in consumer fraud case where "dominant common questions" included whether defendant's "advertising was false or misleading," whether defendant's conduct "violated the statutory and/or common law causes of action delineated in the…Complaint," and whether the class members suffered damages as a result of the conduct).

> b.    *A Class Action Is the Superior Method to Resolve this Controversy.*

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). In a case such as this, where there are numerous class members who each have relatively small claims, "a class action is the only feasible mechanism for resolving the dispute efficiently." *In re M3 Power Razor*, 270 F.R.D. at 56. "[I]n the absence of class certification, there would be

nothing for an individual class member to control because a separate action would not be prosecuted." *Id.*

Application of the Rule 23(b)(3) "superiority" factors show that a class action is the preferred procedure for this Settlement. The damages at issue for each Class Member are not large. It is neither economically feasible, nor judicially efficient, for Class Members to pursue their claims against Defendant on an individual basis. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quotation and citation omitted). Additionally, the fact of settlement eliminates any potential difficulties in managing the trial of this Action as a class action. *Id.* at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial"). Under the circumstances presented here, a class action is superior to any other mechanism for adjudicating the case. The requirements of Rule 23(b)(3) are satisfied in connection with the proposed Settlement.

### D.   *The Court Should Schedule a Final Approval Hearing.*

The last step in the settlement approval process is a final approval hearing, at which the Court will hear any evidence or argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. The Court will determine at or after the final approval hearing whether the Settlement should be approved; whether to enter a final approval order under Rule 23(e); whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses; and whether to approve a service award for Mr. Porter.

Plaintiff and Class Counsel request the Court schedule the final approval hearing for a date convenient for the Court but no sooner than 65 days following the date the Court grants preliminary approval of the Settlement (at least 65 days is necessary to provide sufficient time for the mailing of class notice, the opportunity for Class Members to opt out or object, and the opportunity for the Parties to respond to objections, if any, *see* Ex. D, Preliminary Approval Order ¶ 22).

## IV.    CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request the Court:

1.   grant preliminary approval to the Settlement;

2.   conditionally certify the Settlement Class as defined in this motion and the Settlement Agreement;

3.   approve the method of notice set forth in the Settlement Agreement and the forms of notice attached as Exhibits A-B to the Declaration of Michael A. Tompkins, Esq.;

4.   approve and order the opt-out and objection procedures set forth in the Settlement Agreement;

5.   stay this litigation pending final approval of the Settlement;

6.   preliminarily bar and enjoin any Class Members from asserting, instituting, or prosecuting, directly or indirectly, any Released Claims in any court or other forum against any of the Released Parties.; and

7.   schedule a final approval hearing no sooner than 65 days from the date the Court grants preliminary approval of the Settlement.

For the Court's convenience, Plaintiff and Class Counsel attach as Exhibit D to the motion a proposed order granting preliminary approval of the Settlement.

Dated: July 18, 2022
       Carle Place, New York

                                    Respectfully submitted,

                                    _____/s/_____
                                    Michael Tompkins, Esq.,
                                    Jeffrey K. Brown, Esq.,
                                    Brett R. Cohen, Esq.
                                    **LEEDS BROWN LAW, P.C.,**

One Old Country Road, Suite 347
Carle Place, New York 11514

&

Jason Sultzer, Esq.
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 200,
Poughkeepsie, New York 12601

&

Ian McLoughlin, Esq.
**SHAPIRO HABER & URMY LLP**,
2 Seaport Lane,
Boston, MA 02210

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing motion, memorandum, and supporting documents were filed electronically through the Courts' electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: July 18, 2022

/s/ _____
Michael A. Tompkins