# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN PORTER, individually and on behalf of other similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>EMERSON COLLEGE,<br><br>      Defendants. | **Case No. 1:20-cv-11897-RWZ** |

### DECLARATION OF MICHAEL A. TOMPKINS, ESQ. IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN

I, Michael A. Tompkins, declare under penalty of perjury:

1. I am an attorney with the law firm Leeds Brown Law, P.C. ("LBL"), and our firm, along with The Sultzer Law Group, P.C. and Shapiro Haber & Urmy LLP represent Plaintiff Ryan Porter and putative class members of proposed settlement class in this action ("Plaintiffs or "Class").

2. I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

3. With approval of Plaintiff Porter, in consultation with co-counsel, and based on a settlement facilitated by Honorable Judith G. Dein, U.S.M.J., during our two remote mediation sessions, Plaintiffs and Defendants memorialized the Settlement Agreement and Release ("Agreement"[1], attached Exhibit "**A**") and present the proposed class-wide settlement to the Court for preliminary approval, such that Plaintiffs through a third-party administrator may inform class

---

[1] All terms utilized in this declaration are defined in the Agreement.

members of their rights, give class members the ability to be heard, and, upon final approval of this Court, distribute settlement proceeds to them.

4. In addition to the Agreement, the parties also agreed upon and submit a proposed Notice of Settlement to be distributed to class members, an Election Form to allow class members to select a method by which they would prefer to receive payments, and a proposed Order Granting Preliminary Approval of the Settlement. Each are attached, respectively, as Exhibits "**B**", "**C**" and "**D**".

5. As detailed below, the Agreement reflects a fair and reasonable compromise of the claims asserted in this action, and it is both substantively and procedurally fair.

6. As discussed below, the Agreement reflects a substantial recovery in light of the risks for establishing liability, damages, and class certification, and for the reasons discussed below, it should be preliminarily approved to allow class members to know their rights and make an informed decision about their involvement and the proposed resolution. After the notice process and at a fairness hearing, Plaintiff will move for final approval of the settlement, subject to the directives of this Court.

**Procedural History**

7. Plaintiff, on behalf of himself and similarly situated students at Emerson College, filed his initial Complaint on October 21, 2020 alleging breach of contract, unjust enrichment and conversion/taking of property based foundationally on Emerson's decision at the conclusion of the Spring 2020 semester to not provide a pro rata refund for tuition and fees when Emerson was allegedly unable to provide the contracted-for in-person and on-campus educational services for the entirety of the semester. *See* Dkt. 1.

8. On December 23, 2020, Emerson filed a motion to dismiss. *See* Dkt. 13.

9. In response to Emerson's motion, Plaintiff filed his Amended Complaint on January 26, 2021. *See* Dkt. 18.

10. Emerson then filed its motion to dismiss the Amended Complaint on February 10, 2021. *See* Dkt. 20.

11. On April 15, 2021, this Court denied Emerson's motion to dismiss. *See* Dkt. 32.

12. Emerson then filed an Answer, in which it asserted various affirmative defenses to Plaintiff's claims including, *inter alia*, excused performance and impossibility. *See* Dkt. 41.

13. During June 2021, the parties exchanged formal discovery requests, but before finalizing and formally responding, the parties began initial settlement discussions including the possibility of mediating or participating in a settlement conference before Judge Dein.

14. On July 13, 2021, Your Honor referred the parties to Alternative Dispute Resolution via Judge Dein. *See* Dkt. 43.

**Settlement & Negotiations**

15. On December 1, 2021, the parties held their first remote settlement conference before Judge Dein wherein they spent considerable time discussing the merits of the claims, the likelihood of class certification, the issues associated with establishing damages, and other pending cases asserting similar claims that are pending in Massachusetts and across the country. *See* Dkt. 52.

16. The matter did not resolve at the initial mediation, however, the parties—with the assistance of Judge Dein—continued to pursue settlement discussions and agreed to a second mediation session which took place on February 14, 2022. *See* Dkt. 58.

17. In advance of that second mediation, Defendant produced additional data and information regarding the students at Emerson, including percentages of tuition and fees that were

offset by College-funded amounts and totals of students in various programs. Plaintiffs were also able to review and identify policy documents on Emerson's website, those on the Internet Archives, and data compiled by the National Center for Education Statistics, including their Integrated Postsecondary Education Data System, IPEDS.

18. At the second mediation session and via the assistance of Judge Dein, the parties agreed to a settlement in principle. *See* Dkt. 58.

19. Subsequently, the parties exchanged drafts of the Agreement along with supporting papers and Plaintiff retained the services of Simpluris, Inc. to perform preliminary calculations and ensure that the proposed allocation formula was fair and reasonable in light of the claims and defenses in this action. Notably, Emerson supplied Simpluris, Inc. with tuition and fee totals for class members and provided totals on Emerson-funded aid like scholarships and grants that did not require repayment.

20. That exchange of information and preliminary calculations for the reasons the parties requested additional time to submit this application, as it helped ensure class members would be protected and the proceeds from the Settlement would be distributed in an equitable manner.

**Terms of the Settlement**

21. Plaintiffs secured a Settlement Agreement that established that Emerson will pay $2,060,000 into a common fund inclusive of attorneys' fees, costs, service awards, claims administration costs, and expenses. (Agreement § 1.14). The proposed class will encompass over 4,000 students that were enrolled as graduate and undergraduate students that paid tuition and fees during the Spring 2020 and were impacted by the COVID-19 Pandemic and Emerson's response to the same. (Agreement § 1.27).

22. Importantly, the parties agreed upon an allocation formula and methodology that closely ties to the claims asserted in this action, including allocation of fees, allocation of tuition, and the same to various subgroups of categories of students enrolled at Emerson during the Spring 2020 semester – based on their out-of-pocket costs offset by Emerson-funded amounts. (Agreement § 3.5(B)).

23. As part of the allocation formula, as it was agreed upon by the parties and is presented to the Court in Section 3.5 of the Agreement, Class Members shall be categorized into the following classifications: (1) Undergraduates, (2) Graduate Students, (3) Tuition paying, and (4) Fee paying. The Settlement Claims Administrator shall prepare calculations to be approved by the Parties, and the Net Settlement Fund shall be distributed proportionately to all Class Members based on the following terms and criteria:

>   (a.) Class Members who are undergraduate students and who paid fees shall be entitled to collect $50.
>
>   (b.) Students who enrolled for online only classes at the beginning of the Spring 2020 Semester, who paid no tuition or fees, or who left Emerson prior to March 6, 2020, are not eligible to collect any proceeds.
>
>   (c.) Class Members who were enrolled in professional studies are entitled to collect $50.
>
>   (d.) 90% of the remainder after the allocations in Sections 3.5(B)(I) and (III) (estimated to be $1,000,000) shall be allocated to Class Members enrolled as undergraduate students on a prorated basis based on a percentage of tuition and fees paid to Emerson during the Spring 2020 Semester. Specifically, undergraduate students shall receive a proportionate and prorated distribution of proceeds based on the amount of tuition and fees they paid for the Spring 2020 semester, taking into account any Emerson-funded amounts that did not require repayment.
>
>   (e.) 10% of the remainder after the allocations in Sections 3.5(B)(I) and (III) (estimated to be $111,583.33) shall be allocated to Class Members enrolled as graduate students on a prorated basis based on a percentage of tuition and fees paid to Emerson during the Spring 2020 Semester. Specifically, graduate students shall receive a proportionate and prorated

5

> distribution of proceeds based on the amount of tuition and fees they paid for the Spring 2020 semester, taking into account any Emerson-funded amounts that did not require repayment

(Agreement § 3.5(B)).

The sum of all calculated amounts is expected to be approximately $1,315,833.33, after payment of attorney's fees, costs, expenses, service awards, and cost of the Settlement Claims Administrator. (Agreement § 3.5(C)). As a result of these calculations by the formula and methodology described above, Class Members who paid more out of pocket (i.e. via their own payments, monies from family members, or student loans) will receive more than students who had their education during that semester subsidized or covered (i.e. students with Emerson-backed scholarships or grants, or other aid that did not requirement repayment). (Agreement § 3.5(B)).

24. This represents a significant potential recovery to all members of the Settlement Class pursuant to the terms of the Settlement Agreement. Indeed, in order to receive a settlement check, Class Members are not required to submit any information or materials, because Emerson maintained records that allow for direct notice and to perform the calculations. *See* Ex. D. In fact, Class Members will even be able to submit an Election Form regarding their preferred method for obtaining a settlement check. (Agreement § 2.4(D)).

25. The parties seek the appointment of Simpluris, Inc. as the settlement administrator to effectuate and administer the notice plan, given their involvement during the finalize stages of settlement negotiations and after mediation. Before selecting Simpluris, Inc. the parties engaged in a bidding process whereby the reviewed bids from multiple services administrators and spoke to administrators about the best methodologies for effectuating notice in this type of case. The parties selected Simpluris, Inc., based on its reputation for work and its experience administering

class actions, as well as their willingness to prioritize performing the calculations in an expedited manner.

26. Class Counsel are experienced litigators who have successfully represented dozens of classes, having been certified as class counsel on numerous occasions outside the context of settlement. Attached as Exhibit "**E**" is LBL's resume detailing my firm's relevant experience in class actions. I have also attached Exhibit "**F**" and Exhibit "**G**", respectively, as the resumes of The Sultzer Law Group, P.C. and Shapiro Haber & Urmy LLP detailing their firms' relevant experience in class actions.

27. Throughout this litigation, LBL has coordinated and worked with The Sultzer Law Group, P.C. ("SLG") located at 85 Civic Center Plaza, Suite 200, Poughkeepsie, New York 12601 and Shapiro Haber & Urmy LLP ("SHU") located at 2 Seaport Lane, Boston, MA 02210, ("Proposed Class Counsel") to investigate, litigate, and ultimately resolve the above referenced action.

28. With regards to myself and LBL, we are experienced in class action, including cases concerning refunds of tuition and fees associated with the pandemic. For example, during February 2022, LBL and SLG were recognized for their work on behalf of students enrolled at the University of La Verne during the Spring 2020 semester that alleged that they had failed to receive the services they contracted and paid for. *See Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal., Feb. 8, 2022) where the Honorable Mark C. Scarsi, U.S.D.J., stated:

> Counsel here has done significant work in identifying and investigating potential claims, including bringing a meritorious motion for class certification supported by ample evidence. Counsel also has a wealth of experience handling class actions. [Citing the declaration of Michael A. Tompkins]. The only firm without substantial class action experience, Charon Law, has experienced co-counsel as support… Counsel has demonstrated strong knowledge of the applicable law throughout the briefing process for this class certification motion. And finally, counsel has

7

demonstrated it will commit sufficient resources to represent the class in this heavily litigated case.

Similarly, in *Dean v. Maryville University of Saint Louis*, the Honorable Thomas C. Albus stated:

> The Court further finds that appointment of interim Co-Lead Counsel in the consolidated case is in the best interests of the parties and of judicial economy. Such appointment will establish a clear leadership structure on the Plaintiffs' side, will allow Defendant and Defendant's counsel clear direction with respect to Plaintiffs' Counsel's authority to negotiate and enter into stipulations, confer with respect to deadlines and other issues, and agree to Court required discovery plans.

*Dean v. Maryville Univ. of Saint Louis*, Case No. 20SL-CC02850 (Mo. 21st, Cir. Ct., Feb. 9, 2021).

29. LBL has also previously worked to resolve claims for similarly situated individuals including unpaid interns and recent college graduates. *See e.g.*, *Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266 at *7 (S.D.N.Y. Oct. 13, 2015) (resolving claims on behalf of unpaid interns under various labor laws with the court noting "Co-Counsel and Leeds Brown Law, P.C. are experienced and well-qualified employment and class action lawyers with expertise in prosecuting and settling labor law cases."); *Huggins v. Gucci America, Inc.*, Index No. 161446/2014 (N.Y. Sup. Ct. N.Y. Cty. Apr. 30, 2018) (resolving unpaid wage claims for interns); *Carden v. IMG Worldwide, LLC*, Index No. 162501/2014 (N.Y. Sup. Ct. N.Y. Cty. May 30, 2017) (same); *Grant v. Warner Music Group Corp.*, Case No. 13-CV-449 (PGG) (S.D.N.Y. Mar. 10, 2016) (same); *Vitetta v. Sirius XM Radio Inc.*, Case No. 14-CV-2926 (VEC) (S.D.N.Y. Feb. 17, 2016) (same); *Arias v. Clear Channel Broadcasting, Inc.*, Case No. 14-CV-05088 (SN) (S.D.N.Y. Feb. 2, 2016) (same); *O'Jeda v. Viacom*, 13 Civ. 5658 (JMF)(GWG) (S.D.N.Y Jan. 13, 2016) (same); *see also* Ex. E.

30. SLG is one of the preeminent plaintiff's class-action and complex commercial law firms in the nation with particular expertise in consumer class-actions. *See* the Declaration of Jason

Sultzer, Esq. of The Sultzer Law Group, P.C. ("Sultzer Decl."). SLG is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for its class action practice. *Id.* SLG has substantial experience with consumer class actions. *Id.* Jason Sultzer, Esq. of SLG has prosecuted and been appointed as lead counsel in numerous consumer class action cases throughout the county in which he has recovered millions of dollars and obtained injunctive relief on behalf of consumers. *Id.* His significant experience representing consumers in class action litigation is detailed more fully in his firm resume. *Id.*

31. Ian McLoughlin and SHU are Massachusetts leaders in consumer class actions, representing consumers across a range of industries, including finance, banking, retail, and insurance consumers. *See* Ex. F. SHU has procured numerous landmark decisions and obtained trial victories in major consumer class actions. *Id.* A summary of SHU's experience and successes in consumer and other class actions is attached as Exhibit G. Id.

32. To the best of Plaintiff's Counsel's knowledge, there is no competing litigation already commenced by any member of the class.

33. Based on Plaintiff's Counsel's knowledge and understanding to evaluate the risks and the benefits of the proposed settlement, we strongly believe that the proposed settlement confers a significant benefit to Class Members. Furthermore, my firm conducted an analysis of class action settlements in cases involving similar allegations.

34. Based on that evaluation and considering not only the aggregate value of the Settlement but also the structural aspects of the Settlement that will encourage and facilitate claim submission, we have concluded that this Settlement presents a highly favorable recovery for the Class.

**Exhibits**

35. The following exhibits are attached to this declaration as true and accurate copies:

**Exhibit A**   Settlement Agreement and Release;

**Exhibit B**   Proposed Notice of Settlement;

**Exhibit C**   Election Form;

**Exhibit D**   Proposed Order Granting Preliminary Approval of the Settlement;

**Exhibit E**   Leeds Brown Law, P.C. Resume;

**Exhibit F**   Shapiro Haber & Urmy LLP Resume.

Signed under penalties of perjury on July 18, 2022.

   /s/_____
Michael Tompkins, Esq.,
**LEEDS BROWN LAW, P.C.,**
One Old Country Road, Suite 347
Carle Place, New York 11514

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing motion, memorandum, and supporting documents were filed electronically through the Courts' electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: July 18, 2022

/s/
Michael A. Tompkins