# Exhibit A
Settlement Agreement & Release

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN PORTER, individually and on behalf of others similarly situated,<br><br>                                                              Plaintiff,<br><br>      - against -<br><br>EMERSON COLLEGE,<br><br>                                                             Defendant. | **Case No. 1:20-cv-11897-RWZ** |

## SETTLEMENT AGREEMENT AND RELEASE

       This Settlement Agreement and Release ("Agreement") is entered into by and between, on the one hand, Plaintiff Ryan Porter ("Named Plaintiff") on behalf of himself and a class of individuals ("Plaintiffs" or the "Settlement Class," as hereinafter defined) and, on the other hand, Defendant Emerson College ("Emerson," "Emerson College" or "Defendant"), and together with Named Plaintiff, the "Parties").

## RECITALS AND BACKGROUND

       A.     Named Plaintiff, a graduate of Emerson College, commenced the above-captioned action (the "Action") alleging breach of contract and quasi contract claims stemming from Emerson College's cessation of in person classes during the Spring 2020 Semester.

       B.     Defendant vigorously contested each and every claim in the Action and denies all material allegations of the Action and would assert numerous defenses if this matter proceeded further.

       C.     However, mediation with Magistrate Judge Judith G. Dein resulted in a proposal and resolution that was accepted by both Parties to resolve the claims of this Action and would result in class-wide relief in exchange for a class-wide release of claims.

       D.     Defendant, without admitting any wrongdoing or liability, has agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Action.

       E.     Class Counsel (as hereinafter defined) has analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on Named Plaintiff and the Settlement Class. Based upon their analysis and evaluation of a number of factors, Named Plaintiff

1

and Class Counsel recognize the risks of litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years. Class Counsel and Named Plaintiff are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of Named Plaintiff and the Settlement Class.

F. The Parties, by and through their respective counsel, have engaged in settlement discussions in connection with the potential resolution of the Action, and have sought to avoid engaging in substantial motion practice, or conducting time-consuming formal discovery. The Parties – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

G. Strictly for the purpose of settling the Action, and without admitting any wrongdoing or liability or the propriety of class certification for any other purpose or any other fact or legal principle, Defendant agrees to class certification under the Federal Rules of Civil Procedure ("FRCP") 23 of the Settlement Class.

H. NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action.

1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **Acceptance Period** means the thirty (30) day period beginning from the date of the mailing of the Notice and Election Form, during which a Class Member can submit an Election Form as to the method they would prefer to receive a settlement payment.

1.2 **Agreement** means this Settlement Agreement and Release.

1.3 **Class Counsel** means Jeffrey K. Brown, Esq., Michael Tompkins, Esq., and Brett R. Cohen, Esq. of Leeds Brown Law, P.C., One Old Country Road, Suite 347, Carle Place, New York 11514; Mindy Dolgoff and Jason Sultzer of The Sultzer Law Group, P.C. 85 Civic Center Plaza, Suite 200, Poughkeepsie, New York 12601; and Ian McLoughlin, Shapiro Haber & Urmy LLP, 2 Seaport Lane, Boston, MA 02210.

1.4 **Class List** means a list in electronic format, preferably Excel, that includes, for each respective Class Member, the names, last known addresses, last known e-mail addresses, last known telephone numbers, along with tuition and fee payment totals, amount of university-based scholarships/grants received, present enrollment status, expected graduation date, and other information related to the calculations and distribution of settlement proceeds as set forth below. The Class List shall be provided and maintained in a confidential fashion.

1.5 **Costs and Fees** means Class Counsel's attorneys' fees, costs, and expenses; costs and fees associated with the Settlement Claims Administrator; and Service Award to be paid to

2

Named Plaintiff in accordance herewith.

1.6 **Court** means the United States District Court, District of Massachusetts.

1.7 **Days** means business days if the specified number is ten (10) days or fewer, and calendar days if the specified number is greater than ten (10) days.

1.8 **Defendant** means Emerson College.

1.10 **Defendant's Counsel** means Paul G. Lannon, Jr., Jeremy M. Sternberg, Michael T. Maroney, and Emily Robey-Phillips of Holland & Knight LLP, 10 St. James Avenue, Boston, MA 02116.

1.11 **Election Form** means the form, a copy of which is attached to the Notice of Settlement of Class Action Lawsuit, or as otherwise approved by the Court that Class Members may return to designate which method for receiving the funds would be preferred, including physical check, Venmo, Paypal, or other reasonable available options. In the absence of a Class Member returning an Election Form, the Settlement Claims Administrator shall mail a physical check.

1.12 **Final Effective Date** means, provided no appeal is timely filed, thirty (30) days after the Court has entered an Approval Order. If an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Approval Order has been finally dismissed; (2) the Approval Order has been affirmed on appeal in a form substantially identical to the form of the Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Approval Order in a form substantially identical to the form of the Approval Order entered by the Court.

1.13 **Final Settlement Amount** means the sum of the Net Settlement Fund and all Court-approved Costs and Fees.

1.14 **Gross Settlement Fund** means Two Million Sixty Thousand Dollars ($2,060,000.00), an amount to be used for allocation and calculation purposes that represents the maximum amount that Defendant agrees to pay for complete and final resolution of the Action.

1.15 **Named Plaintiff** means Ryan Porter.

1.16 **Net Settlement Fund** means the Gross Settlement Fund, minus Court-approved Costs and Fees.

1.17 **Notice(s)** means the Court-approved Notice of Settlement of Class Action Lawsuit as authorized in the Approval Order.

1.18 **Objector** means an individual Class Member who properly files an objection to this Agreement.

**1.19** **Opt-out Statement** means the written, signed statement that an individual Class Member submits indicating he or she has elected to exclude him or herself ("opt out") from the settlement.

**1.20** **Order Granting Final Approval ("Final Approval Order")** means an Order entered by the Court: (i) certifying the Settlement Class; (ii) approving the terms and conditions of this Agreement, including Defendant's obligations to fund and distribute monies under this Agreement; (iii) appointing Leeds Brown Law, P.C., The Sultzer Law Group, P.C., and Shapiro Haber & Urmy LLP as Class Counsel; and (iv) approving and directing the implementation of the Agreement or other provisions to effectuate the settlement.

**1.21** **Preliminary Approval Order** means an Order entered by the Court (i) certifying the Settlement Class, (ii) approving the procedures for effectuating notice to Class Members, (iii) approving the Notice and Election Form for publication, and (iv) setting dates by which Final Approval should be sought or obtained.

**1.22** **Qualified Settlement Fund ("QSF")** means the account established and controlled by the Settlement Claims Administrator for the purposes of retaining and distributing the Gross Settlement Amount in accordance with this Agreement and any Court order. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, and the Approval Order. Interest, if any, earned in the QSF will become part of the Net Settlement Fund to be distributed to the Class Members.

**1.23** **Released Claims** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, whether based on state, federal, local, statutory or common law or any other law, rule or regulation, against the Releasees, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding Emerson's actions or decisions in respect to the Spring 2020 Semester, including ceasing in-person education and transitioning to a remote format for the Spring 2020 Semester, including but not limited to all claims that were brought or could have been brought in the Action relating to any and all Releasing Parties.

**1.25** **Releasees** means Emerson College as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, agents, consultants, independent contractors, insurers, including without limitation employees of the foregoing, directors, trustees, board members, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, corporations, and all third party service providers or entities identified as Emerson's agents and/or independent contractors in this Action.

4

1.25 **Releasing Parties** means Named Plaintiff, those Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past heirs, executors, family members, lenders, funders, payors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, limited liability companies, partnerships and corporations.

1.26 **Service Award** means the portion of the Gross Settlement Amount, if any, requested by Named Plaintiff and approved by the Court as a reasonable award to the Named Plaintiff for representing the interests of the Settlement Class.

1.27 **Settlement Class (or Class Members, individually)** means: "all students and former students, including graduate and undergraduate, who remained enrolled as of March 13, 2020, who paid, or on whose behalf payment was made to, Defendant Emerson College for Spring 2020 Semester tuition and fees for educational services that were not entirely online, and whose tuition and fees have not been refunded." Excluded from the Settlement Class are (1) any District Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

1.28 **Settlement Checks** means checks issued to Class Members.

1.29 **Spring 2020 Semester** means the Spring 2020 academic terms at Emerson College, which began on approximately January 14, 2020 and ended on or before May 1, 2020.

1.31 **Unknown Claims** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Releasees or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the Final Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Upon the Final Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state

or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

## 2. APPROVAL AND PROCEDURE

**2.1** **Settlement Class.** Strictly for purposes of settling the Action, and without admitting any wrongdoing or liability or the propriety of class certification for any other purpose or any other fact or legal principle, Defendant agrees to class certification pursuant to FRCP 23 of the Settlement Class.

**2.2** **Settlement Claims Administrator.**

    A. **Retention.** Within twenty (20) days after the filing of the Approval Motion, Class Counsel shall engage a qualified Settlement Claims Administrator who is agreeable to the Parties.

    B. **Funding Settlement Claims Administrator.** The Settlement Claims Administrator shall be paid out of the QSF.

    C. **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) printing and disseminating to the Settlement Class the Notice and Election Forms; (ii) performing a skip trace and resending, within one (1) day of receipt, any Notice and Election Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (iv) monitoring and maintaining a telephone number with telephone answerers until the Final Effective Date or the termination of this Agreement, whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from each Class Member that the Settlement Claims Administrator receives; (vi) receiving, retaining and reviewing the Election Forms submitted by each Class Member; (vii) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (viii) distributing the Settlement Checks to Class Members and/or Court-approved Costs and Fees, as necessary; (ix) preparing, sending and/or wire-transferring Class Counsel's attorneys' fees, expenses, and costs; (x) mailing Service Awards and Settlement Checks in accordance with this Agreement and the Approval Order; (xii) responding to inquiries of Class Members regarding procedures for filing objections, Opt-out Statements, and Election Forms; (xiii) referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiv) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xv) promptly apprising counsel for the

Parties of the activities of the Settlement Claims Administrator; (xvi) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Election Forms, returned mail and any and all other actual or attempted written or electronic communications with the Settlement Class; (xvii) confirming in writing to counsel for the Parties and the Court its completion of the administration of the settlement; (xviii) timely responding to communications from the Parties and their counsel; (xix) providing all information, documents and calculations necessary to confirm the Gross Settlement Amount to the Parties' Counsel; (xx) obtaining, administering, and maintaining a settlement website; (xxi) providing CAFA notice (as described below); and (xxii) such other tasks as the Parties mutually agree.

D. **CAFA Notice.** Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served upon the Attorneys General of each U.S. State in which Settlement Class members reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

E. **Weekly Reporting Requirements.** Throughout the period of claims administration, the Settlement Claims Administrator shall provide reports to the Parties upon their request regarding (i) the status of the emailing and physical mailing of the Notices and Election Forms to Class Members, (ii) the status or progress of the claims administration process, (iii) anticipated or expected distribution of the Settlement Checks, and (iv) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties a biweekly update on the number of Class Members, Objectors, and Opt-outs.

F. **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendant's Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement.

2.3 **Preliminary Approval Motion.**

A. Within thirty (30) days of complete execution of this Agreement or in accordance with any orders set by the Court, Class Counsel shall file a Motion for Preliminary Approval ("Preliminary Approval Motion") that is agreed to by Defendant. In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice, (2) the proposed Election Form, (3) the proposed Preliminary Approval Order, (4) an executed version of this Agreement, and (5) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying a Class for settlement purposes under FRCP 23, and approving the settlement. The Preliminary Approval Motion also will seek the setting of a date for individuals to submit Election Forms, Opt-out Statements and/or object to this Agreement.

B.  In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain an "Approval Order" in accordance with the Court-approved schedule, so that the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Action with prejudice; (4) award Costs and Fees, including any Service Award; and (5) authorize distribution and payment to the Class Members.

2.4 **Notice and Election Forms to Class Members.**

A.  **Class List.** Within twenty-one (21) days of the Approval Order being signed by the Court, Defendant's Counsel shall provide Class Counsel and the Settlement Claims Administrator with the Class List.

B.  **Notice.** The Notice will inform the Settlement Class about this settlement, and will also advise them of their rights, including their ability to object to, opt-out of, or participate in the settlement. Within fourteen (14) days after receipt of the Class List, or as otherwise ordered by the Court, the Settlement Claims Administrator shall (1) email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address, and (2) mail a copy of the Notice and Election Form to all Class Members not presently enrolled at Emerson College for whom the Settlement Claims Administrator does not have a valid email address through regular U.S. Mail to such students' mailing address as listed in Emerson's records.

C.  **Skip Trace and Remailing.** If a Notice is returned as undeliverable via email, then the Settlement Claims Administrator shall take all reasonable steps to obtain a mailing address, including performing a skip trace, and shall email the Notice to any other email address obtained or mail Notice to any physical address. If a Notice is returned as undeliverable via mail, then the Settlement Claims Administrator shall take all reasonable steps to obtain a mailing address, including requesting such information from Defendant, performing a skip trace, and/or remailing the Notice to any address. The Settlement Claims Administrator shall also mail a Notice and Election Form to any Class Member who requests them after the initial mailing of Notice and before the Notice Response Deadline. The Settlement Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notices and Election Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be paid from the QSF. To assist in obtaining a more accurate email or physical address for any Class Member, Class Counsel may provide such to the Settlement Claims Administrator to be used for the purposes of mailing of Notice.

D.  **Notice Response Deadline.** Class Members are not required to take any affirmative steps to participate in this Action and upon approval settlement checks will be mailed to all Class Members by the dates set forth in this Agreement or in the Approval Order. However, Class Members shall be given the opportunity via the Election Form to decide upon a reasonably convenient method for them to receive

8

their settlement proceeds among several reasonable options (i.e. mailing of checks, Venmo, PayPal, etc.). Class Members may submit their Election Forms via first class mail, fax, email, or through the website by the Notice Response Deadline. The Notice Response Deadline for Election Forms shall be (i) thirty (30) days from the date of the initial mailing or as otherwise set by the Court, and (ii) an additional fifteen (15) days later for any Class Members who were unable to file a timely Election Form, due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances. If an envelope does not contain a postmark, it shall be deemed received on the date that the Settlement Claims Administrator stamps the envelope or Election Form as "received."

- E. **Settlement Website.** On the same date as initial mailing of Notices, notice shall also be provided on a website at an available settlement URL to be agreed upon by the parties, which shall be obtained, administered, and maintained by the Settlement Claims Administrator. Copies of this Settlement Agreement, the long-form Notice, and other pertinent documents and Court filings pertaining to the Settlement shall be provided on the Settlement Website.

## 2.5 Opt-outs: Class Members Who Opt-out of the Settlement.

- A. Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement ("Opt-out Statement"). In order to be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and a statement indicating his or her intention to opt-out. To be effective, an Opt-out Statement must be postmarked by United States Postal Service or via verification through the settlement website on or before the Notice Response Deadline.

- B. The time period to opt-out of the settlement shall be on or before the Notice Response Deadline.

- C. The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendant's Counsel not later than three (3) days after receipt. The Settlement Claims Administrator shall, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendant's Counsel by both email and overnight delivery. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities in connection with this Agreement.

- D. Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Approval Order, and will have any Released Class Claims released and dismissed with prejudice.

**2.6 Objectors: Class Members Who Object to the Settlement.**

    A.     Class Members who wish to present objections to the proposed settlement must do so in writing by the Notice Response Deadline. To be considered, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Notice Response Deadline. The statement must include: (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; and (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules). The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice mailed to the Objector, to Class Counsel and Defendant's Counsel by email delivery no later than three (3) days after receipt of the objection.

    B.     An Objector may withdraw his or her objections at any time. Any Class Member who has elected to opt-out may not submit objections to the settlement.

    C.     To the extent that the issue raised by the Objector has not been resolved, the Objector or either Party may seek relief from the Court including declaring that the Objector has opted out or that her/his objection has been overruled.

**2.7 Final List of Class Members, Objectors and Opt Outs.**

    A.     No later than thirty (30) days after the Notice Response Deadline, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendant's Counsel: (a) a list of all Class Members, (b) a list of all Objectors, (c) a list of all Class Members who timely submitted an Opt-out Statement, and (d) an estimated calculation of the Settlement Proceeds to Class Members in accordance with the formulas and allocation amounts discussed below.

    B.     To the extent that any issues arise, they should be addressed by the Parties. If the issues cannot be resolved within 14 days, they should be submitted to the Court via the Application for Final Approval with designated paragraphs concerning the respective position of the Parties.

**2.8 Final Approval Motion.**

    A.     No later than thirty (45) days after the Notice Response Deadline, Plaintiffs shall move for Final Approval of the Settlement, including dismissal of the claims with prejudice and approval of all procedures for effectuating the terms of the settlement.

B.  Within 15 days after Final Approval Order from the Court, Defendant shall provide Class Counsel and the Settlement Claims Administrator an updated Class List, including any information required by the Settlement Claims Administrator to process payment and perform the necessary reporting.

C.  Within 15 days after Final Approval Order from the Court, the Settlement Claims Administrator shall finalize calculations for allocation of the Settlement proceeds and provide a version to the parties. To the extent any issues arise from the calculations, the parties shall convene a meet and confer. To the extent that the parties are unable to resolve the disputes concerning the calculations, the parties shall submit the settlement to Magistrate Judge Dein for final resolution of the calculations and distributions.

## 3. Settlement Terms

3.1 **Amount.** Defendant agrees to pay Two Million and Sixty Thousand Dollars ($2,060,000.00) to fully resolve and satisfy any and all amounts to be paid to all Class Members, any Court-approved Costs and Fees, any Reserve Fund, and all costs and fees associated with the Settlement Claims Administrator.

   A.  **Funding the QSF.** Defendant shall make payments up to the total of the Gross Settlement Amount as follows: (i) on or before 30 days after Preliminary Approval, Defendant shall pay $50,000 for the primary purpose of funding the Settlement Claims Administrator and paying the costs associated with effectuating notice; (ii) on or before 45 days after Final Approval, Defendant shall fund the remainder of the Gross Settlement Amount into the QSF.

   B.  **Reversion.** After 270 days after the mailing of Settlement Checks and all outstanding issues are resolved and 60% or more of the funds are claimed or cashed by Class Members, any amounts remaining in the QSF shall be distributed to Emerson College Student Financial Assistance Fund. However, if less than 60% of Class Members cash checks or claim their funds, then the parties shall discuss and agree upon a reallocation of unclaimed or uncashed funds.

   C.  To the extent that the parties cannot agree, Magistrate Judge Judith Dein shall have binding authority to resolve disputes regarding funding amounts, the reversion process, and/or the reallocation of uncashed or unclaimed funds.

3.2 **Payments to Class Members and Others.** Funds shall be disbursed by the Settlement Claims Administrator as follows:

   A.  Within 30 days after the Final Effective Date, the Settlement Claims Administrator shall (i) mail all Settlement Checks to Class Members or distribute funds to Class Members in accordance with method selected on Election Form, (ii) mail any Court-approved Service Award to Named Plaintiff, (iii) mail or wire-transfer payment to Class Counsel in the amount of Court-approved attorneys' fees and costs.

11

B.  To the extent that the parties cannot agree, Magistrate Judge Judith Dein shall have binding authority to resolve disputes regarding payments to Class Members, and distribution of settlement proceeds.

**3.3 Amounts Payable as Attorneys' Fees, Costs, and Expenses.**

A.  In connection with the Application for Approval, Class Counsel will petition the Court for an award of no more than Six Hundred Eighty-Six Thousand Six Hundred Sixty Six Dollars and Sixty Six Cents ($686,666.66), which represents ⅓ of the Gross Settlement Fund, which shall include attorneys' fees, costs, and expenses other than the Settlement Claims Administrator incurred in connection with the Action. Defendant shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

B.  The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Approval.

C.  Defendant shall fund the Court-approved Costs and Fees representing Class Counsel's costs, fees and expenses in the manner described in Section 3.1.

**3.4 Service Award for Named Plaintiff.**

A.  In return for services rendered to the Settlement Class, Named Plaintiff may apply to the Court to receive a Service Award of no more than Seven Thousand Five Hundred Dollars ($7,500.00). Defendant shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

B.  The application for a Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Approval.

C.  Defendant shall fund the Court-approved Costs and Fees representing the Service Award in the manner described in Section 3.1.

**3.5 Net Settlement Fund and Allocation to Class Members.**

A.  Classifications. First, to the extent possible, Class Members shall be categorized into the following classifications: (1) Undergraduates, (2) Graduate Students, (3) Tuition paying, and (4) Fee paying.

12

B.  Allocation. The Settlement Claims Administrator shall prepare calculations to be approved by the Parties, and the Net Settlement Fund shall be distributed proportionately to all Class Members based on the following terms and criteria:

  I.   Class Members who are undergraduate students and who paid fees shall be entitled to collect $50.

  II.  Students who enrolled for online only classes at the beginning of the Spring 2020 Semester, who paid no tuition or fees, or who left Emerson prior to March 13, 2020, are not eligible to collect any proceeds.

  III. Class Members who were enrolled in professional studies are entitled to collect $50.

  IV.  90% of the remainder after the allocations in Sections 3.5(B)(I) and (III) (estimated to be $1,000,000) shall be allocated to Class Members enrolled as undergraduate students on a prorated basis based on a percentage of tuition and fees paid to Emerson during the Spring 2020 Semester. Specifically, undergraduate students shall receive a proportionate and prorated distribution of proceeds based on the amount of tuition and fees they paid for the Spring 2020 semester, taking into account any Emerson-funded amounts that did not require repayment.

  V.   10% of the remainder after the allocations in Sections 3.5(B)(I) and (III) (estimated to be $111,583.33) shall be allocated to Class Members enrolled as graduate students on a prorated basis based on a percentage of tuition and fees paid to Emerson during the Spring 2020 Semester. Specifically, graduate students shall receive a proportionate and prorated distribution of proceeds based on the amount of tuition and fees they paid for the Spring 2020 semester, taking into account any Emerson-funded amounts that did not require repayment.

C.  **Amount Allocation.** The sum of all calculated amounts is expected to be $1,315,833.33, after payment of attorney's fees, costs, expenses, service awards, and cost of the Settlement Claims Administrator.

## 3.6  Release of Claims.

A.  Upon the Final Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.

B.  Except as provided in this Agreement, upon payment of all Costs and Fees as approved by the Court, Class Counsel, on behalf of the Class Members, irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Releasees for attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation of the

13

Class. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation in the Action.

3.7 **Non-Admission of Liability.** By entering this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Named Plaintiff and/or the Class Members, individually or collectively, all such liability being expressly denied. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to fully and finally resolve and settle all disputes with the Named Plaintiffs and Class Members. Settlement of the Action, negotiation and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all complaints or other papers filed by Plaintiff in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

4. **INTERPRETATION AND ENFORCEMENT**

4.1 **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

4.2 **No Assignment.** Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

4.3 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

4.4 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of Named Plaintiff and all Class Members in the Action, this Agreement is binding.

4.5 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the

terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

4.6     **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

4.7     **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Commonwealth of Massachusetts, without regard to choice of law principles.

4.8     **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties may not unilaterally petition the Court to modify this Agreement or to increase the Defendant's payment obligations, except to the extent provided in this Agreement.

4.9     **Waivers, Modifications and Amendments to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

4.10    **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

4.11    **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

4.12    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**WE AGREE TO THESE TERMS,**

| FOR DEFENDANT: | FOR PLAINTIFF AND THE SETTLEMENT CLASS: |
|---|---|

FOR DEFENDANT:

Emerson College

*[signature]*

By: PAUL DWORKIS
Vice President Admin + Finance

Date: July 12, 2022

HOLLAND & KNIGHT LLP

*[signature]*

Paul G. Lannon, Jr. (BBO No. 563404)
Jeremy M. Sternberg (BBO No. 556566)
Michael T. Maroney (BBO No. 653476)
Emily Robey-Phillips (BBO No. 698744)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
paul.lannon@hklaw.com
jeremy.sternberg@hklaw.com
michael.maroney@hklaw.com
emily.robey-phillips@hklaw.com

Date: 7/13/22

FOR PLAINTIFF AND THE SETTLEMENT CLASS:

Ryan Porter

*[signature]*
Ryan Porter (Jul 10, 2022 13:15 PDT)

Date: Jul 10, 2022

*[signature]*

Michael Tompkins, Esq.,
Jeffrey K. Brown, Esq.,
Brett R. Cohen, Esq.
LEEDS BROWN LAW, P.C.,
One Old Country Road, Suite 347
Carle Place, New York 11514;

&

*[signature]*

Jason Sultzer, Esq.
THE SULTZER LAW GROUP, P.C.
85 Civic Center Plaza, Suite 200,
Poughkeepsie, New York 12601;

&

Ian McLoughlin, Esq.
SHAPIRO HABER & URMY LLP,
2 Seaport Lane,
Boston, MA 02210

Date: Jul 10, 2022

16