**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RYAN PORTER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>EMERSON COLLEGE,<br>        Defendants. | **Case No. 1:20-cv-11897-RWZ** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

Table of Contents…………………………………………………………………………..i

Table of Authorities……………………………………………………………………..ii-iii

I.      PROCEDURAL HISTORY……………………………………………………..2

II.     THE SETTLEMENT…………………………………………………………4

      A.  *Definition of the Class*………………………………………………………4

      B.  *Monetary Settlement Benefits*………………………………………………4

      C.  *Class Release*...……………………………………………………………...5

      D.  *Settlement Administration and Notice*………………………………………5

III.    ARGUMENT……………………………………………………...……6

      A.  *The Notice Program Was Adequate*…………………………………………6

      B.  *Certification of the Class is Appropriate*...……………………………………7

      C.  *The Court Should Grant Final Approval of the Settlement*……………………8

IV.     CONCLUSION………………………………………………………...…14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arredondo v. Univ. of La Verne*,
    341 F.R.D. 47 (C.D. Cal. 2022) ...................................................................12

*In re Asacol Antitrust Litig.*,
    Civil Action No. 1:15-cv-12730 (DJC),
    2017 U.S. Dist. LEXIS 158491 (D. Mass. Sep. 14, 2017) .......................8

*Bussie v. Allmerica Fin. Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999) ...........................................................12

*City P'ship Co. v. AH. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ...................................................................10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ....................................................................9

*Cox v. Branch Banking & Tr. Co.*,
    No. 5:17-cv-01982,
    2019 U.S. Dist. LEXIS 4587 (S.D. W. Va. Jan. 10, 2019) .....................12

*Crane v. Sexy Hair Concepts, LLC*,
    Civil Action No. 17-10300-FDS,
    2019 U.S. Dist. LEXIS 85472 (D. Mass. May 14, 2019) .......................10

*Fid. & Guar. Ins. Co. v. Star Equip Corp.*,
    541 F.3d 1 (1st Cir. 2008) ...........................................................................8

*Greenspun v. Bogan*,
    492 F.2d 375 (1st Cir. 1974) .......................................................................9

*Gulbankian v. MW Mfrs., Inc.*,
    No. 10-10392-RWZ,
    2014 U.S. Dist. LEXIS 177668 (D. Mass. Dec. 29, 2014) .....................12

*Hill v. State St. Corp.*,
    No.1:09-cv-12146-GAO,
    2014 U.S. Dist. LEXIS 179702 (D. Mass. Nov. 26, 2014) ......................8

*Lapan v. Dick's Sporting Goods, Inc.*,
    No. 1:13-cv-11390-R,
    2015 U.S. Dist. LEXIS 169508 (D. Mass. Dec. 11, 2015) .....................10

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ................................................................8, 9

*Martin v. Lindenwood University*,
   No. 4:20-cv-01128 (E.D. Mo. 2022) ....................................................................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...............................................................................................7

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
   582 F.3d 30 (1st Cir. 2009) ...............................................................................8, 10

*P.R. Dairy Farmers Ass'n v. Pagan*,
   748 F.3d 13 (1st Cir. 2014) ....................................................................................8

*Roberts v. TJX Cos.*,
   No. 13-cv-13142-ADB,
   2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016) ..................................10

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ...........................................................................9, 12

*Rosado v. Barry University, Inc.*,
   No. 1:20-cv-21813 (S.D. Fla. 2021) ....................................................................13

*Voss v. Rolland*,
   592 F.3d 242 (1st Cir. 2010) ..................................................................................9

*Wright v. Southern New Hampshire University*,
   No. 1:20-cv-00609 (D. NH. 2021) ......................................................................13

**Statutes**

Federal Rule of Civil Procedure 23(e) ...........................................................................8, 14

Rule 23 ...............................................................................................................................7

Rule 23(a) and 23(b)(3) .....................................................................................................7

Rule 23(b)(1), (b)(2) ..........................................................................................................6

Rule 23(e)(1)(B)...............................................................................................................6, 7

Plaintiff Ryan Porter submits this memorandum in support of his Motion for Final Approval of Class Action Settlement and approval of the Settlement Agreement and Release (the "Settlement") (ECF No. 64-1), which resolves all claims asserted in this litigation on behalf of a proposed nationwide class against defendant Emerson College ("Defendant").[1]

The Court should grant final approval because the Settlement provides a fair, reasonable, and adequate recovery for the Class. Specifically, the Settlement requires Defendant to pay a sum of $2.06 million into a common fund for the benefit of Class Members and which will not be returned to Defendant. This Settlement is the result of two all-day mediation sessions and a recommendation by Magistrate Judge Judith Dein, that both parties accepted. The Settlement provides for substantial cash benefits to Class Members.

Approximately 4,000 Class Members have been provided direct notice by email or regular mail, who were not required to take any action to participate in the Settlement. § 2.4(D). However, they were offered the option to receive payment via modern distribution mechanisms, such as Venmo and PayPal, via an election form provided in the Notice. Additionally, a settlement website was created, at https://ecspring2020settlement.com ("Settlement Website"), where Class Members could obtain information about the case, view relevant documents, and download the Election Form. The cash benefits provided by the Settlement, together with the direct notice program and a simplified claims process, makes the Settlement highly favorable for Class Members.

As set forth below, the Settlement meets all the requirements necessary for final approval. The Court should grant final approval of the Settlement.

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement. ECF No. 64-1.

## I.    PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on October 21, 2020 alleging breach of contract, unjust enrichment, conversion and taking of property based on Emerson's failure to provide a pro rata refund for tuition and fees when it allegedly failed to provide the contracted-for in-person and on-campus educational services for the entirety of the Spring 2020 semester. ECF No. 1; Declaration of Jason P. Sultzer In Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Sultzer Decl.") ¶ 14; Declaration of Michael Tompkins In Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Tompkins Decl.") ¶ 14. On December 23, 2020, Emerson served Plaintiff with a motion to dismiss. ECF No. 13-14; Sultzer Decl. ¶ 15; Tompkins Decl. ¶ 15. In response to Emerson's motion, Plaintiff filed his Amended Complaint on January 26, 2021. ECF. No. 18; Sultzer Decl. ¶ 16; Tompkins Decl. ¶ 16.

Emerson then filed its motion to dismiss the Amended Complaint on February 10, 2021. ECF No. 20-21; Sultzer Decl. ¶ 17; Tompkins Decl. ¶ 17. The Court denied Emerson's motion to dismiss by Order dated April 15, 2021. ECF No. 32; Sultzer Decl. ¶ 18; Tompkins Decl. ¶ 18. Emerson then served Plaintiff with its Answer, in which it asserted various affirmative defenses to Plaintiff's and the Settlement Class's claims including, *inter alia*, excused performance and impossibility. ECF No. 41; Sultzer Decl. ¶ 19; Tompkins Decl. ¶ 19. After the Court denied Emerson's motion to dismiss, the parties prepared to commence discovery concerning Plaintiff's claims and Emerson's defenses. Sultzer Decl. ¶ 20; Tompkins Decl. ¶ 20.

Prior to the service of any formal discovery, the parties agreed to engage in formal mediation in an effort to resolve the Action with Magistrate Judge Judith Dein, who graciously agreed to help facilitate resolution of this matter. ECF No. 43; Sultzer Decl. ¶ 21; Tompkins Decl. ¶ 21. To facilitate the mediation sessions with Judge Dein, Plaintiff requested and Defendant produced information concerning the number of enrolled students, the classification

of those students, and the tuition paid by students and the amount of scholarships and grants that were awarded to students for the Spring 2020 semester, including amounts subsidized by Emerson. Sultzer Decl. ¶ 22; Tompkins Decl. ¶ 22. The settlement negotiations were conducted at arm's length over a period of several months. ECF No. 52, 48; Sultzer Decl. ¶ 27; Tompkins Decl. ¶ 27.  On December 1, 2021 and February 14, 2022, the parties participated in mediation sessions with Judge Dein via Zoom. Sultzer Decl. ¶ 28; Tompkins Decl. ¶ 28. The matter did not resolve at the initial mediation, however, the parties—with the assistance of Judge Dein—continued to pursue settlement discussions, exchanged additional data, and agreed to a second mediation session which took place on February 14, 2022. ECF No. 58; Sultzer Decl. ¶ 29; Tompkins Decl. ¶ 29. At the second mediation session, the parties agreed to a settlement in principle and spent months working out the details of the settlement including the allocation formula and election process, which is the product of hard-fought, arm's length negotiations. ECF No. 58; Sultzer Decl. ¶ 30; Tompkins Decl. ¶ 30.

On July 18, 2022, Plaintiff filed a motion for preliminary approval of the Settlement. ECF No. 62. On July 21, 2022, the Court granted preliminary approval of the Settlement, and through that order, the Court: (i) preliminary approved the settlement; (ii) conditionally certified the Class; (iii) approved Plaintiff's proposal for notice to the Class of the Settlement; (iv) approved and ordered the opt-out and objections procedures; (v) and scheduled a final approval hearing for September 27, 2022 at 2 p.m. ECF No. 67.

## II.    THE SETTLEMENT

The Settlement's terms are detailed in the Settlement Agreement and Release. ECF No. 64-1. The Notice and Election Form (which the Court previously approved) were filed with Plaintiff's motion for preliminary approval. ECF Nos. 64-2, 64-3. A summary of the Settlement's key terms follows:

A. **_Definition of the Class_**

The "Settlement Class" is defined in § 1.27 of the Settlement Agreement as:

All students and former students, including graduate and undergraduate, who remained enrolled as of March 13, 2020, who paid, or on whose behalf payment was made to, Defendant Emerson College for Spring 2020 Semester tuition and fees for educational services that were entirely online, and whose tuition and fees have not been refunded.

B. **_Monetary Settlement Benefits_**

Pursuant to the Settlement, Defendant will pay $2.06 million into a common fund, which will be used to pay the Class Members. § 3.1. Upon distribution of fund, class members will receive payment in the form of check or modern distribution forms based on their selection recorded via the Election Form. Class members will receive payments based on class status and tuition and fees paid, accounting for any amounts subsidized by Emerson during the Spring 2020 semester. First, Class Members enrolled as undergraduate students who paid fees shall be entitled to a $50 payment. § 3.5(B)(I). Second, Class Members enrolled in professional studies are entitled to a $50 payment. § 3.5(B)(III). Third, ninety percent (90%) of the remainder after steps one and two shall be distributed to undergraduate students via a prorated distribution based on the amount of tuition and fees each individual class member paid. § 3.5(B)(IV). Fourth, ten percent (10%) of the reminder after steps one and two shall be distributed to graduate students via a prorated distribution based on the amount of tuition and fees each individual Class Member paid. § 3.5(B)(V).

C. **_Class Release_**

In exchange for the benefits conferred by the Settlement, all Class Members who do not opt out will be deemed to have released Defendant from claims relating to Defendant's actions or decisions in respect to the Spring 2020 Semester, including ceasing in-person education and transitioning to a remote format for the Spring 2020 Semester. The detailed release language is

set forth in §§ 1.23, 1.24, 1.25 and 3.6 of the Settlement Agreement.

**D.     *Settlement Administration and Notice***

As noted, Defendants have provided records in their possession of approximately 5,000 students, which the Settlement Administrator has used to provide personalized notice to each Class Member. § 2.4(A); Declaration of Amy Lechner Regarding Notice and Claims Administration ("Lechner Decl.") ¶ 10. The Settlement Administrator conducted skip traces on mailing addresses and other reasonable steps to assure accurate and updated information was available for all Class Members. § 2.4(C). The Settlement Administrator used the list provided by Defendant to determine the Settlement Class Members and send personal notice. Lechner Decl. ¶ 10. The personal notice to 4,262 Class Members advised Class Members of their rights in connection with the Settlement. Lechner Decl. ¶ 8.

The Settlement Administrator recently notified Class Counsel that due to administrative error, 188 Class Members did not receive timely notice of the Settlement. Sultzer Decl. ¶ 4; Tompkins Decl. ¶ 4; Lechner Decl. ¶ 12. One of those Class Members, however, did submit an Election Form. Sultzer Decl. ¶ 4; Tompkins Decl. ¶ 4; Lechner Decl. ¶ 12. The delayed Notice was a result of personal email addresses of certain Class Members being unverifiable and, thus, physical mailings were required. Sultzer Decl. ¶ 4; Tompkins Decl. ¶ 4; Lechner Decl. ¶ 12. Due to administrative error those physical mailings were not timely made. Sultzer Decl. ¶ 4; Tompkins Decl. ¶ 4; Lechner Decl. ¶ 12. Once notified by the Settlement Administrator, Class Counsel directed the Settlement Administrator to effectuate the physical mailings and directed the Settlement Administrator to extend the deadlines to opt-out, object, or submit Election Forms by thirty (30) days for this limited group of 187 Class Members (188 minus the one Class Member who submitted an Election Form).  Sultzer Decl. ¶ 4; Tompkins Decl. ¶ 4; Lechner Decl. ¶ 12. Class Counsel also notified the Court as soon as practicable after learning of this

notice error to inform the Court of the issue and the Parties agreed proposed plan to resolve it. Sultzer Decl. ¶ 5; Tompkins Decl. ¶ 5. The physical mailings to these 187 Class Members will be sent on or before September 26, 2022, and upon the expiration of the time period to opt-out or object Class Counsel will submit a status report to the Court, along with a proposed, agreed upon final order. Sultzer Decl. ¶ 5; Tompkins Decl. ¶ 5. The 187 Class Members comprise only 4.4% of the Class and, due to the overwhelmingly favorable reaction to the Settlement by over 95% of the Class, Class Counsel expects a similar favorable reaction from these Class Members. Sultzer Decl. ¶ 6; Tompkins Decl. ¶ 6.

Moreover, the Settlement Administrator established the Settlement Website that provides additional information on the Settlement and this Action, including a long-form notice providing additional detail concerning the Settlement and the Action, relevant pleadings from this Action, and contact information for Class Counsel. Lechner Decl. ¶ 13.

## III.   ARGUMENT

### A.   *The Notice Program Was Adequate.*

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Complex Lit. § 21.312.[2]   The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

The Court-approved Notice satisfies the requirements of Rule 23(e)(1)(B). The Notice informed Class Members of the substantive terms of the Settlement. It advised Class Members of

---

[2] Quotations omitted from all citations unless otherwise noted.

their options for opting out of or objecting to the Settlement, and how to obtain additional information about the Settlement.

As part of the Settlement, Defendants provided contact information for approximately 5,000 students, from which the Settlement Administrator determined that 4,262 were Class Members.  Lechner Decl. ¶ 10. The Settlement Administrator then used that list to send Class Members personalized notice. *Id.* ¶ 11. Further, the Settlement Claims Administrator preformed skip traces and all other reasonable steps to assure accurate personal information was available for each Class Member. *Id.* ¶ 12. Additionally, to supplement the personalized notice and to reach additional Class Members, the Class Notice included a website maintained by the Settlement Claims Administrator that provided additional information to the class members. *Id.* ¶ 13.

For these reasons, notice program the Court previously approved more than meets the requirements of Rule 23 and of constitutional Due Process.

### B.     *Certification of the Class is Appropriate.*

Through its order preliminary approving the Settlement, the Court has already found that the Class meet the requirements for certification under Rule 23(a) and 23(b)(3).  ECF No. 67. For the same reasons as Plaintiff set forth in his motion for preliminary approval, Plaintiff requests that the Court make the same class certification findings in granting Final Approval.

### C.     *The Court Should Grant Final Approval of the Settlement.*

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip Corp.*, 541 F.3d 1, 5 (1st Cir. 2008). While the proponent of a class action settlement must demonstrate that the settlement is fair, reasonable and adequate, usually "there is a presumption in favor of the settlement" where, as here, "discovery has been adequate and the parties have bargained at arm's length."

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44
(1st Cir. 2009).  In determining whether to approve the Settlement, the Court should be guided
by the "strong public policy in favor of settlements" over continued litigation, particularly
complex actions. *See, e.g., P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014);
*Hill v. State St. Corp.*, No.1:09-cv-12146-GAO, 2014 U.S. Dist. LEXIS 179702, at \*17 (D.
Mass. Nov. 26, 2014) (same).

Under Federal Rule of Civil Procedure 23(e), approval of a class action settlement is a
two-step process: first, a "preliminary approval" order issues; and, second, after notice of the
proposed settlement has been provided to the class and a hearing has been held to consider the
fairness, reasonableness, and adequacy of the settlement, "final approval" is considered. *See*
Manual for Complex Litigation § 13.14 (4th ed. 2004). Courts in this circuit often look to four
factors to determine whether a settlement should be presumed fair: "(1) the negotiations occurred
at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are
experienced in similar litigation; and (4) only a small fraction of the class objected." *In re
Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004); *In re
Asacol Antitrust Litig.*, Civil Action No. 1:15-cv-12730 (DJC), 2017 U.S. Dist. LEXIS 158491,
at \*14 (D. Mass. Sep. 14, 2017) (quoting *Lupron*).

Moreover, in evaluating whether a settlement is fair, reasonable, and adequate, courts
should balance the benefits of settlement and the risks of continued litigation. *Voss v. Rolland*,
592 F.3d 242, 251 (1st Cir. 2010). "The court cannot, and should not, use as a benchmark the
highest award that could be made to the plaintiff[s] after full and successful litigation of the
claim[s]." *Rolland v. Cellucci*, 191 F.R.D. 3, 14-15 (D. Mass. 2000). As the First Circuit has
observed: any settlement is the result of a compromise – each party surrendering something in

order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion. *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 211 (D. Me. 2003) ("I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *Lupron(R)*, 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered").

In this case, examination of the foregoing factors firmly demonstrates that the Settlement is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court. For the reasons set forth below, the Settlement more than meets the standard for final approval.

***First***, the Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. The parties engaged in two full-day formal mediation before an experienced and respected mediator and judge, the Honorable Magistrate Judge Judith G. Dein. Sultzer Decl. ¶ 28; Tompkins Decl. ¶ 28. The first mediation session, while productive, did not result in a resolution, and only after a full second day of mediation were the Parties able to reach an agreement on the core terms of the Settlement. Sultzer Decl. ¶¶ 28-29; Tompkins Decl. ¶¶ 28-29. Specifically, the Parties were able to reach a compromise based on the recommendation of Judge Dein. Even after that, the Parties negotiated vigorously concerning additional terms of the Settlement. Sultzer Decl. ¶ 31; Tompkins Decl. ¶ 31. Class Counsel zealously represented their clients at mediation, procuring a substantial recovery for the Class and a settlement structure that will ensure that real, meaningful cash benefits will go to Class Members. Because the Parties here engaged in extensive arm's-length negotiation, "there is a presumption in favor of the settlement." *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44 (*quoting City P'ship Co. v. AH.*

9

*Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)); *see also Roberts v. TJX Cos.*, No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *20 (D. Mass. Sept. 30, 2016) (where "the parties' Settlement is the product of arms-length negotiation by competent counsel, . . . it is entitled to a presumption of reasonableness"). Further, "[t]he assistance of an experienced mediator [] reinforces that the Settlement [] is non-collusive." *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390-R, 2015 U.S. Dist. LEXIS 169508, at *3 (D. Mass. Dec. 11, 2015); *Crane v. Sexy Hair Concepts*, *LLC*, Civil Action No. 17-10300-FDS, 2019 U.S. Dist. LEXIS 85472, at *4 (D. Mass. May 14, 2019) (same).

*Second*, the Parties prepared to commence discovery, however prior to the service of formal discovery, the parties began initial settlement discussions and agreed to engage in formal mediation in an effort to resolve the Action with Judge Dein. Sultzer Decl. ¶¶ 20-21; Tompkins Decl. ¶¶ 20-21. To facilitate the mediation, there was sufficient informal discovery that was exchanged in order for both parties to evaluate the full value of the claims. Sultzer Decl. ¶ 22; Tompkins Decl. ¶ 22. Indeed, in order to intelligently discuss settlement, Plaintiffs procured from Defendants data concerning the number of undergraduate and graduate students, the amount of tuition paid by the different categories of students, and the amount of grants and scholarships that were awarded by Emerson to students. Sultzer Decl. ¶ 22; Tompkins Decl. ¶ 22. Plaintiff also reviewed a substantial share of official policy documents from Emerson, including those available on Emerson's website as well as prior versions of the same via the Internet Archives. Additionally, Plaintiff utilized and often cited information maintained in the public data base controlled and distributed by the National Center for Education Statistics, including their Integrated Postsecondary Education Data System. Sultzer Decl. ¶¶ 23-24; Tompkins Decl. ¶¶ 23-24. Moreover, Plaintiff engaged and worked with an expert to develop a damages model

for this Action. This information more than allowed Plaintiff to come to an understanding of the charges assessed by Emerson, the College's response to the COVID-19 pandemic, the core documents that were generated and disseminated by Emerson as part of the admission, application, enrollment, registration, and payment processes. It further allowed Plaintiff to understand the reasonable expectations of students when they contracted with the College, and understand Emerson's financial situation throughout the Pandemic. Sultzer Decl. ¶ 26; Tompkins Decl. ¶ 26.

*Third*, Class Counsel are highly experienced litigators specializing in consumer class actions and are the forefront of litigation concerning the rights of students during the pandemic. The attorneys of record for Plaintiff together have dozens of years' experience litigating such actions. *See* Sultzer Decl. ¶¶ 38-40; Tompkins Decl. ¶¶ 38-40. In fact, recently in a college refund case pending in the Central District of California, the Honorable Mark C. Scarsi, U.S.D.J., noted the work performed by Leeds Brown Law, P.C. and The Sultzer Law Group, P.C. (along with other co-counsel):

> Counsel here has done significant work in identifying and investigating potential claims, including bringing a meritorious motion for class certification supported by ample evidence. Counsel also has a wealth of experience handling class actions. [Citing the declaration of Michael A. Tompkins, Esq. of Leeds Brown Law, P.C.]. The only firm without substantial class action experience, Charon Law, has experienced co-counsel as support… Counsel has demonstrated strong knowledge of the applicable law throughout the briefing process for this class certification motion. And finally, counsel has demonstrated it will commit sufficient resources to represent the class in this heavily litigated case…

*See Arredondo v. Univ. of La Verne*, 341 F.R.D. 47, 54 (C.D. Cal. 2022).

Accordingly, Class Counsel has the knowledge and understanding to competently evaluate the risks and the benefits of the proposed settlement. Based on this evaluation, Class Counsel strongly believe that the proposed settlement confers a significant benefit to Class

Members. Sultzer Decl. ¶ 41; Tompkins Decl. ¶ 41. "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Gulbankian v. MW Mfrs., Inc.*, No. 10-10392-RWZ, 2014 U.S. Dist. LEXIS 177668, at *10-11 (D. Mass. Dec. 29, 2014) (quoting *Rolland*, 191 F.R.D. at 10 ); *Cox v. Branch Banking & Tr. Co.*, No. 5:17-cv-01982, 2019 U.S. Dist. LEXIS 4587, at *8 (S.D. W. Va. Jan. 10, 2019); *see also Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Settlement Class relief that is fair, reasonable and adequate.").

**Fourth**, to date only one Class Member has decided to opt-out of the settlement and no Class Member has expressed dissatisfaction with the Settlement to Class Counsel. Sultzer Decl. ¶¶ 7-8; Tompkins Decl. ¶¶ 7-8. Given this overwhelmingly favorable response from 95.6% of the Class, Class Counsel does not expect a different outcome for the remaining 4.4%.  However, once the proposed extended deadline has passed, Class Counsel will submit a status report to the Court.

In addition to the above factors, the substance of the Settlement itself provides evidence of its fairness. Specifically, Class Members will receive a substantial cash settlement benefit, which will be allocated fairly based upon a percentage of the tuition and fees each Class Member paid to Emerson during the Spring 2020 Semester. Moreover, in the event that there are uncashed checks, the remaining funds will be sent to the Emerson College Student Financial Assistance Fund for the benefit of Emerson students. These steps will help to ensure that all

monies designated for distribution to the Class will benefit the students either directly or indirectly.

Additionally, the notice and election process set forth in the Settlement was designed to ensure Class Members are the ultimate beneficiaries of the Settlement. Emerson provided a list of all students to the claims administrator who was able to deliver direct notice to Class Members and provided election forms to offer each Class Member the opportunity to receive payments in the form of check or modern distribution services. Importantly, Class Members did not have to go through a claims process and rather are deemed authorized Class Members, entitled to a distribution, as long as they did not choose to opt-out.

Further, this settlement is well within the reasonableness of other nearly identical college refund cases that have settled across the country. For example, the award here reflects that class members will be receiving between $50.00 and $569.63 (after fees and costs) based on their proportionate share of tuition and fees that each class paid after accounting for subsidization by Emerson. As a result and after fees and costs, the median class member will be receiving approximately $293.31, based on the tuition and fees they paid after the offsets of scholarships, grants, and other awards not needing to be repaid. Sultzer Decl. ¶ 42; Tompkins Decl. ¶ 42. In comparison, similar cases that have settled around the country have reached similar rates of remuneration for the Class Members. *See Rosado v. Barry University, Inc.*, No. 1:20-cv-21813 (S.D. Fla. 2021) (granting final approval of a settlement with an award of approximately $400 per student, before costs and fees.); *Wright v. Southern New Hampshire University*, No. 1:20-cv-00609 (D. NH. 2021) (granting final approval of a settlement with an award of approximately $407 per student, before costs and fees); *Martin v. Lindenwood University*, No. 4:20-cv-01128

(E.D. Mo. 2022) (granting final approval of a settlement with an award of approximately $275 per student, before costs and fees).

In summary, Plaintiff and Class Counsel are confident in the strength of their case but are also pragmatic in their awareness of the various defenses available to Defendant and the risks inherent in continued litigation. The immediate, cash recovery provided by the Settlement provides an excellent result when considering the risks inherent in this litigation and the delay that would necessarily occur from protracted litigation. Based on their experience as counsel in similar complex class actions, Class Counsel concludes the Settlement is outstanding, both given the complexity of the litigation and the significant risks and barriers that would have continued to loom in the absence of the Settlement.

## IV.   CONCLUSION

The Settlement with Defendant for $2.06 million in compensation recovered for the benefit of Class Members represents an outstanding result. The Settlement satisfies the fairness and reasonableness standards of Rule 23(e).

Based on the foregoing, Plaintiff and Class Counsel respectfully request the Court, upon the filing of the status report and a proposed order:

1.   grant final approval to the Settlement;

2.   certify the Class as defined in this motion and the Settlement;

3.   find that the notice afforded to Class Members was adequate; and

4.   bar and enjoin any Class Members who do not seek exclusion from asserting, instituting, or prosecuting, directly or indirectly, any Released Claims in any court or other forum against any of the Released Parties.

Dated:  September 23, 2022
        Carle Place, New York

                              Respectfully submitted,

                              ____/s/ *Michael A. Tompkins*___

Michael A. Tompkins, Esq.,
Jeffrey K. Brown, Esq.,
Anthony M. Alesandro, Esq.
**LEEDS BROWN LAW, P.C.,**
One Old Country Road, Suite 347
Carle Place, New York 11514

&

Jason Sultzer, Esq.
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 200,
Poughkeepsie, New York 12601

&

Ian McLoughlin, Esq.
**SHAPIRO HABER & URMY LLP**,
2 Seaport Lane, Boston, MA 02210

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading and its attachments was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: September 23, 2022

_                            _/s/ Michael A. Tompkins_____
                            Michael A. Tompkins

15

1